PEOPLE v DRY LAND MARINA, INC

Docket No. 98771. Submitted March 4, 1988, at Grand Rapids. Decided February 23, 1989. Leave to appeal applied for.

Dry Land Marina, Inc., a retail seller of watercraft, was charged in the Kent Circuit Court with eight counts of sales tax fraud. Four of defendant's employees were also charged with aiding and abetting tax fraud. At trial, fourteen jurors heard the evidence and were instructed by the trial court, George R. Cook, J., and two jurors were dismissed before the panel retired to deliberate. After deliberations commenced and over the objection of defendants, a juror was permanently excused for illness. The trial court summoned the two alternate jurors, who indicated upon the court's voir dire examination that they had not discussed the case with anyone and could fairly decide the case. One alternate was selected by lot and the reconstituted panel was instructed to begin deliberations anew. The jury returned a verdict acquitting the employees but convicting defendant marina on five counts of sales tax fraud. Defendant marina appealed.

The Court of Appeals *held:*

The reinstatement of a discharged alternate juror, over the objection of the defendant, to replace a juror who becomes ill after deliberations have commenced requires a reversal of the defendant's conviction only when the defendant has been prejudiced by the procedure. Here, there is no indication of prejudice to defendant marina and reversal of its convictions therefore is not warranted.

Affirmed.

1. JURY — TRIAL — REMOVAL OF JURORS — APPEAL.
   The decision of a trial court to remove a juror will only be reversed when there has been a clear abuse of discretion.

REFERENCES

Am Jur 2d, Trial §§ 1072, 1074, 1076, 1078, 1092, 1096.

Constitutionality and construction of statute or court rule relating to alternate or additional jurors or substitution of jurors during trial. 84 ALR2d 1288.

2. Criminal Law — Jury Trial — Reinstatement of Discharged
   Alternate Juror.

> The reinstatement of a discharged alternate juror, over the
> objection of the defendant, to replace a juror who becomes ill
> after deliberations have commenced requires a reversal of the
> defendant's conviction only when the defendant has been preju-
> diced by the procedure.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *E. David Brockman* and *Paul L. Bricker,* Assistant Attorneys General, for the people.

*Warner, Norcross & Judd* (by *Harold S. Sawyer* and *Steven J. Vander Ark*), for defendant on appeal.

Before: Sullivan, P.J., and MacKenzie and G. Schnelz,* JJ.

MacKenzie, J. Dry Land Marina (hereafter defendant), a retail seller of watercraft, was charged with eight counts of sales tax fraud, MCL 205.27; MSA 7.657(27). Four of defendant's officers/salesmen were also charged with aiding and abetting tax fraud. Following a jury trial, defendant was convicted on five counts and all of the individual defendants were acquitted. Defendant was sentenced to pay a $5,000 fine on each conviction. Defendant appeals as of right. We affirm.

At issue in this case is the manner in which the trial court resolved a situation which arose when, during jury deliberations, a juror became ill. Trial began on September 15, 1986, with the selection of fourteen jurors. On October 7, 1986, following ten days of testimony, the court instructed the fourteen jurors and then selected two alternates. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

twelve jurors subsequently deliberated for approximately one hour.

The jury resumed deliberations the following morning, October 8. The court excused the jury for the day at 2:30 P.M., in part because one of the jurors, who had broken her arm the preceding weekend, told the court she was not feeling well. The ailing juror was instructed to return in the morning or call.

The following morning, October 9, the juror in question failed to appear or contact the court. When the clerk advised that she had seen the juror in the courthouse, she was summoned and questioned. The juror explained that she was at the courthouse to appear in court with a friend whom she had bailed out of jail the previous night. She indicated that she was having circulatory problems in her hand, that her hand was discolored, that she had an appointment to see her doctor that afternoon, that the painkillers she was taking made her groggy, and that there was a possibility she would have to undergo an operation within two to three weeks. The court decided, over defense objection, to permanently excuse the juror and seat one of the alternates.

The court then conducted a voir dire examination of the alternate jurors. Both indicated that they followed the court's instructions as given when they were excused and had not discussed the case with anyone. When both reaffirmed their ability to judge the case fairly, one was selected by lot to replace the ailing juror. The jury was instructed to begin deliberations anew.

That afternoon, the prosecutor trying the case discovered that after the replacement juror had been selected as an alternate she spoke with another prosecutor. On the record the following day, the second prosecutor stated that, although the

conversation began on an unrelated topic, the juror expressed her disappointment in being excused and expressed an opinion that the defendants were not guilty. The replacement juror remained impaneled.

The jury reached its verdict on October 13, 1986. As previously noted, the individual defendants were all acquitted. Defendant was acquitted on two counts and convicted on five counts. The court had earlier dismissed the remaining count against defendant.

On appeal, defendant challenges both the trial court's decision to discharge the ailing juror and its decision to seat an alternate after jury deliberations had begun.

We first consider the trial court's decision to discharge the ailing juror. A criminal defendant is placed in jeopardy once the jury is impaneled and sworn. At that point he has a constitutional right to have his case completed and decided by that tribunal. *United States v Jorn,* 400 US 470, 479, 484; 91 S Ct 547; 27 L Ed 2d 543 (1971); *People v Gardner,* 37 Mich App 520, 526; 195 NW2d 62 (1972), lv den 387 Mich 771 (1972). A discharge of the jury, without legal justification or the defendant's consent, before it has reached final verdict, operates as a dismissal of the charges and bars retrial. *Gardner, supra,* p 526.

The discharge of the ailing juror in the present case occurred after the jury had deliberated for approximately four hours. According to defendant, absent a finding of "manifest necessity" by the court to justify excusing the juror, the discharge operated as a dismissal with prejudice of all charges against the defendants.

The trial court's decision to remove a juror will only be reversed when there has been a clear abuse of discretion. *People v Van Camp,* 356 Mich

593, 604-605; 97 NW2d 726 (1959); *People v Mason,* 96 Mich App 47, 49-50; 292 NW2d 480 (1980). As reiterated by this Court many times, a trial court abuses its discretion when it makes a determination that is so grossly violative of fact and logic that it defies reason and amounts to passion or bias. *Spalding v Spalding,* 355 Mich 382, 384; 94 NW2d 810 (1959). We conclude that the decision of the trial court to excuse the ailing juror constituted a proper exercise of judicial discretion supported by fact and logic. The juror had a real or imagined physical disability and was obviously reluctant to cooperate, as evidenced by her failure to appear or call the court that morning. Defendant had a definite fundamental interest in retaining the composition of the jury as originally chosen to finally decide its case. However, defendant's equally fundamental right to have a fair and impartial jury decide its case was protected by removing a juror who was either too ill to serve or unwilling to cooperate.

Furthermore, defendant's contention that a finding of manifest necessity by the trial court is required to discharge the juror misconstrues the intent of that concept. Manifest necessity is a standard enunciated in *United States v Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824), which governs a trial court's discretion to declare a mistrial over defendant's objection. Courts are vested as a matter of law with the authority to discharge a jury from rendering a verdict, when, under all the circumstances, there is a manifest necessity to do so in order to further the ends of public justice. *Id.,* p 580. A classic example of manifest necessity requiring discharge of the jury is a hung jury.

In *United States v Jorn, supra,* the United States Supreme Court held that, absent defendant's motion for, or consent to, a mistrial, the

*Perez* manifest necessity doctrine stands as a command to the trial court not to foreclose the defendant's valued right to have that particular jury decide his case until, in "scrupulous exercise" of judicial discretion, it determines that justice will not be served by continuing the proceedings to conclusion. *Id.* The court must consider viable alternative measures to declaring a mistrial.

In accord with these authorities, the Michigan Supreme Court has also held that the trial court must exercise its power to declare a mistrial with great caution and employ less drastic alternatives which would be revealed by the scrupulous exercise of judicial discretion. *People v Benton,* 402 Mich 47, 60-61; 260 NW2d 77 (1977). Before a court declares a mistrial on its own initiative, it should conduct a hearing on the record to thoroughly consider the situation and make explicit findings that no reasonable alternative exists. *Id.,* p 61.

Based on the foregoing, it may be concluded that the policy of protecting defendant's right to have its case decided by the jury as chosen is protected by avoiding a mistrial if reasonable alternatives exist. For the reasons stated below, we think it was reasonable for the court to call back an alternate juror. The fact that other reasonable alternatives existed, and that one or more of these alternatives may have been better than that chosen by the trial court, does not render its decision an abuse of discretion which requires reversal of defendant's conviction.

The remaining question is whether the court's decision to seat an alternate juror after deliberations began constituted error requiring reversal. We hold that it did not.

MCR 6.102(A) provides:

Alternate Jurors. The court may direct that 13
or more jurors may be impaneled to sit in a felony
case. After the instructions to the jury have been
given and the case submitted, the names of the
jurors must be placed in a container and names
drawn from it to reduce the number of jurors to
12, who shall constitute the jury. The persons
eliminated in this manner must be discharged
from the case after the jury retires to consider its
verdict.

This rule clearly and unambiguously mandates
that once alternate jurors are selected they must
be discharged from the case and the remaining
twelve jurors are the panel that will decide the
defendant's case. It is thus clear that the trial
court's decision in the present case to remove a
juror on account of illness after deliberations had
begun was in violation of MCR 6.102(A).

Defendant contends that the error per se requires reversal. We disagree. In reaching this conclusion, we are guided by decisions of several
circuits of the United States Court of Appeals
considering FR Crim P 24(c), the federal rule after
which MCR 6.102(A) was patterned. FR Crim P
24(c) provides:

The court may direct that not more than 6
jurors in addition to the regular jury be called and
impaneled to sit as alternate jurors. Alternate
jurors in the order in which they are called shall
replace jurors who, prior to the time the jury
retires to consider its verdict, become or are found
to be unable or disqualified to perform their
duties. . . . An alternate juror who does not replace a regular juror shall be discharged after the
jury retires to consider its verdict. . . .

The language of FR Crim P 24(c) [and MCR
6.102(A)] is not constitutionally mandated. There-

fore, there is no violation of a defendant's right to trial by a fair and impartial jury when an alternate juror is recalled and substituted for a deliberating juror excused by the trial court. *United States v Phillips,* 664 F2d 971, 992-993 (CA 5, 1981) cert den sub nom *United States v Mainster,* 457 US 1136; 102 S Ct 2965; 73 L Ed 2d 1354 (1982). The most substantial danger of a violation of the rule is that the alternate joining a panel which has engaged in deliberations may be coerced and unduly influenced by those jury members who have already formed an opinion. *Id.,* p 995.

Defendant relies on *United States v Lamb,* 529 F2d 1153 (CA 9, 1975), in which a majority of the court held that the FR Crim P 24(c) requirement that alternate jurors be discharged is mandatory. The *Lamb* decision, however, has not been widely followed in subsequent cases for two reasons. First, as many of the later cases point out, the facts in the *Lamb* case involved a particularly egregious violation of the rule. See, e.g., *Phillips, supra.* Second, as the later cases also note, *Lamb* is at odds with other decisions refusing to hold that violations of Rule 24(c) automatically require a new trial. See, e.g., *Phillips, supra,* citing *United States v Allison,* 481 F2d 468 (CA 5, 1973), aff'd after remand 487 F2d 339 (CA 5, 1973), cert den 416 US 982; 94 S Ct 2383; 40 L Ed 2d 759 (1974), and *United States v Hayutin,* 398 F2d 944 (CA 2, 1968), cert den 393 US 961; 89 S Ct 400; 21 L Ed 2d 374 (1968), subsequent app sub nom *United States v Nash,* 414 F2d 234 (CA 2, 1969), cert den 396 US 940; 90 S Ct 375; 24 L Ed 2d 242 (1969).

The prevailing holding among the circuits is that reinstating a discharged alternate juror during deliberations, absent consent of the defendant, requires reversal of a conviction only when the defendant has been prejudiced by the procedure.

See *Phillips, supra, United States v Kopituk,* 690 F2d 1289 (CA 11, 1982), cert den 463 US 1029; 103 S Ct 3542; 77 L Ed 2d 1391 (1983); *United States v Hillard,* 701 F2d 1052 (CA 2, 1983), cert den 461 US 958; 103 S Ct 2431; 77 L Ed 2d 1318 (1983); *Henderson v Lane,* 613 F2d 175 (CA 7, 1980), cert den 446 US 986; 100 S Ct 2971; 64 L Ed 2d 844 (1980); *United States v Kaminski,* 692 F2d 505 (CA 8, 1982). See generally Anno: *Constitutionality and construction of statute or court rule relating to alternate or additional jurors or substitution of jurors during trial,* 84 ALR2d 1288. See also *People v Bettistea,* 173 Mich App 106; 434 NW2d 138 (1988). We believe that this is the better, more reasonable rule.

We find persuasive *United States v Hillard, supra,* a case factually analogous to the present case. In *Hillard,* a juror became ill after 2½ days of deliberation and a three-day recess. The two alternate jurors, who had heard all jury instructions, remained at the courthouse separated from the deliberating jurors. The trial judge decided to substitute an alternate juror because a mistrial was a great and unnecessary waste. The judge recalled and interviewed the alternate jurors, who admitted having had general discussions concerning the case, and selected one to sit. The court then instructed the entire jury panel to begin deliberations "from scratch." The *Hillard* court found that the two-day deliberation that followed the substitution procedure and the discriminating verdict returned by the jury supported the conclusion that the jury had indeed followed the trial court's instructions that the verdict must be the product of the thought and mutual deliberation of all twelve jurors.

While there may have been other measures the trial court could have taken under the circum-

stances of the case, we find no indication that defendant was prejudiced by the trial court's decision to recall the alternate jurors and substitute one of them for a juror excused on account of illness. Many of the factors considered important by the *Hillard* court and other courts which have considered this issue were present in this case. The case involved several counts of tax fraud against several defendants. Over ten full days of testimony was presented to the jury over the course of 2½ weeks. The types of precautions recommended by the courts were taken in this case, and the jurors reaffirmed their ability to fully and fairly consider the case on the evidence as presented and the law as instructed. The fact that the jury retired for another 2½ days to deliberate and returned a verdict that distinguished between several different counts and defendants supports the notion that the jury fully and fairly considered the case. Under these circumstances, reversal is unwarranted. Affirmed.