PEOPLE v TATE

Docket No. 215400. Submitted October 12, 2000, at Detroit. Decided February 6, 2001, at 9:00 A.M. Leave to appeal sought.

Monya Tate was convicted in the Wayne Circuit Court of two counts of second-degree murder and possession of a firearm during the commission of a felony by a jury whose composition changed after jury deliberations had begun when the court, Timothy M. Kenny, J., excused a juror from service and replaced her with an alternate. The defendant appealed.

The Court of Appeals *held*:

1. Any error by the trial court with regard to its instruction regarding the procedure to be used in the event that a juror had to be excused after the start of deliberations and any error by the trial court with regard to the removal of the excused juror was extinguished by defense counsel's waiver in the form of express approval of the court's instructions and removal of the juror. Moreover, the trial court did not abuse its discretion in excusing the juror when she informed the court that she had developed an itchy rash that might be contagious and for which her pharmacist had recommended that she see her doctor immediately.

2. Defense counsel's waiver of any error in the removal of the juror with the itch also operated as a waiver of any error in replacing that juror with an alternate who had been discharged and was recalled. Even if such error was not waived, the defendant has not shown prejudice that would support a reversal of his convictions.

3. Any error by the trial court in not asking the alternate juror whether she had discussed the case with anyone or formed any opinions regarding the case in her time away from the courthouse was waived upon defense counsel's approval of the procedure employed in the substitution of jurors. In any event, the concerns raised by the defendant were addressed when the trial court asked the alternate whether anyone had spoken to her about the case and whether she could think of any reason why she could not fairly and reasonably deliberate with regard to the case. The alternate's absence when instructions regarding burden of proof were reread to the jury was not crucial because a photocopy of those instructions was given to the jury.

4. The trial court erred in instructing the reconstituted jury that it need not begin deliberations anew. However, reversal is not required because the error did not result in the conviction of an actually innocent person or seriously affect the fairness, integrity, or public reputation of judicial proceedings.

5. The trial court adequately presented to the jury the defendant's theory of the case (mere presence) when it instructed the jury, pursuant to CJI2d 8.5, that the jury could not find that the defendant committed the offenses if it found that the defendant was present but did not participate in the killings. Contrary to the defendant's contention, the trial court did not have to identify another person as the shooter. It was not material whether the jury believed that the other person was the shooter, only that the defendant was not.

Affirmed.

1. CRIMINAL LAW — JURY TRIALS — REMOVAL OF JURORS.

The removal of a juror after jury deliberations have commenced in a criminal trial is within the discretion of the trial court, which must weigh the defendant's fundamental right to a fair and impartial jury with the defendant's right to retain the jury originally chosen.

2. CRIMINAL LAW — JURY TRIALS — RECALL OF DISCHARGED JURORS.

An alternate juror who was discharged before the start of jury deliberations in a criminal trial may be recalled to service after jury deliberations have commenced only with the consent of the defendant; however, error resulting from the failure to get the defendant's consent requires reversal of any resultant conviction only when the defendant has been prejudiced by the procedure (MCR 6.411).

3. CRIMINAL LAW — JURY TRIALS — SUBSTITUTION OF JURORS AFTER COMMENCEMENT OF DELIBERATIONS.

A court presiding over a criminal jury trial in which an alternate juror has been substituted for one of the original jurors after jury deliberations have commenced must instruct the reconstituted jury to begin deliberations anew; error resulting from the failure to so instruct requires reversal of any resultant conviction only when the error resulted in the conviction of an actually innocent person or seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of

Research, Training, and Appeals, *Ana Quiroz*, Assistant Prosecuting Attorney, for the people.

*Carl Ziemba*, for the defendant on appeal.

Before: NEFF, P.J., and TALBOT and J. B. SULLIVAN*, JJ.

PER CURIAM. Defendant appeals as of right from his jury trial conviction of two counts of second-degree murder, MCL 750.317; MSA 28.549, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The trial court sentenced defendant to concurrent sentences of life in prison and 40 to 80 years for murder and two years for felony-firearm. We affirm.

Defendant raises four issues relating to the substitution of a juror during deliberations. The jury that heard the case consisted of thirteen members. Before opening statements, the court instructed the jury not to discuss the case with anyone "until the case is completely over." Following closing statements and final jury instructions on a Thursday, the trial court stated:

> *The Court*: Ladies and gentlemen, at this time 12 of you will go in to deliberate. As you know, we have 13 jurors here. One of you will be blind drawn and will not go into the jury room to deliberate.
> However, I am going to ask that person whose name is drawn to please give me your name and a number where you can be reached tomorrow during the day, so that in the event that we are unable to continue with the 12, we will be

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

able to call that alternate in and have that person deliberate.

I had a case several months ago where the jury went out to deliberate in the afternoon. They didn't reach a verdict and were told come [sic] back the next day. And, that night one of the jurors had a medical emergency in the family and was unable to come back to court. And, rather than having to start the entire trial over again, we were able to call in the alternate, and that alternate was able to participate and we were able to reach a verdict.

The name of Juror No. 10 was drawn as the alternate, the jury retired to deliberate at approximately 4:00 P.M., and the court inquired if counsel were satisfied with the instructions. The prosecutor said "Yes," and defense counsel stated, "the instructions as given were fine . . . ." The next morning, Friday, the court granted a request to have the burden of proof instruction reread, provided the jury with a copy of that instruction, and the jury deliberated the entire day.

At approximately 10:00 A.M. the following Tuesday, Monday being the Labor Day holiday, one of the jurors advised the court, in the presence of counsel and defendant, that she had developed an itchy rash that might be contagious and for which her pharmacist had recommended that she see a doctor that day. The court excused the itching juror without objection, advised the rest of the jury of its concern that the excused juror might be contagious and that the alternate was on her way, and instructed the jury as follows:

*The Court*: Obviously you may have to go back, and I'm not going to say go back to square one, but certainly you will have to share with the other juror how you have been deliberating, and that juror will then be part of the 12 who will decide the case.

After the jury was excused from the courtroom, having been asked to return at 10:15 A.M., the court inquired of counsel if there was anything further for the record; both counsel responded "No."

When the alternate arrived and had been sworn, the following exchange occurred:

> *The Court*: Ma'am, the jurors went out to deliberate initially on Thursday afternoon, and my concern is whether or not since the time you were excused, has either any juror or anyone spoken with you or attempted to speak to you about this particular case?
>
> *Juror No. 10*: Not since I have been dismissed.
>
> *The Court*: Okay. And so that there is no information or nothing that has been provided to you about this case since you left here when your name was drawn as an alternate; is that right?
>
> *Juror No. 10*: That's correct.
>
> *The Court*: And can you think of any reason why you couldn't fairly and reasonably deliberate on this case and be fair to both sides?
>
> *Juror No. 10*: No, I cannot, your honor.
>
> *The Court*: All right. Any questions from either counsel?
>
> *[The Prosecutor]*: No, Judge.
>
> *[Defense Counsel]*: No, sir.

The record does not indicate the exact time Juror No. 10 joined the jury. That afternoon, the jury requested and received a rereading of the instruction that mere presence is not enough to prove that defendant assisted or was the principal actor in a crime and the instructions for second-degree murder. The jury was excused at 1:58 P.M., and returned with its verdict at 2:20 P.M.

Defendant first claims the trial court erred in excusing the itching juror from service after deliberations had begun because the court failed to ascertain

whether the excused juror's rash was contagious and whether she could continue. We disagree. In *People v Carter*, 462 Mich 206; 612 NW2d 144 (2000), the prosecutor conceded that the trial court's jury instructions violated a court rule, but argued that the defendant waived the issue when defense counsel expressed satisfaction with the trial court's refusal of a jury request and its subsequent instruction to the jury. The Supreme Court agreed. Citing *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999), the Court noted the soundness of the rule requiring preservation of issues for appeal by notation on the record, and then reiterated the long-held rule that counsel may not harbor error as an appellate parachute. *Carter, supra* at 214, citing *People v Pollick*, 448 Mich 376, 387; 531 NW2d 159 (1995).

Citing *United States v Olano*, 507 US 725, 732-733; 113 S Ct 1770; 123 L Ed 2d 508 (1993), the Court defined error as "deviation from a legal rule unless the rule has been waived." *Carter, supra* at 214. The Court then distinguished between waiver, defined as "the intentional relinquishment or abandonment of a known right," and forfeiture, defined as "the failure to make the timely assertion of a right," and stated that waiver extinguishes error but forfeiture does not. *Carter, supra* at 215, citing *Carines, supra* at 762-763, n 7; *Olano, supra* at 733; and *United States v Griffin*, 84 F3d 912, 924-926 (CA 7, 1996). The Court stated that, because counsel "*expressly approved*" the trial court's instruction as opposed to merely "*fail[ing] to object*," the approval constituted "a waiver that *extinguishes* any error." *Carter, supra* at 216 (emphasis in the original).

In this case, the trial court clearly instructed the jury that one of the thirteen jurors, whose name would be drawn, would be an alternate who would be called in to continue deliberations in the event that one of the seated jurors was unable to continue, and defense counsel expressly approved the instructions as given. Then, when the court questioned and excused the juror, there was no objection, and counsel again, when queried by the court whether there was anything for the record, responded "No." Pursuant to *Carter, supra*, we conclude that any error in either the instruction regarding the procedure in the event a juror had to be excused or the actual removal of the juror was extinguished by counsel's repeated waiver, either in the form of express approval or (which amounts to the same thing) by responding "No" when specifically queried by the court whether there was anything further for the record.

In any event, a trial court's decision to remove a juror will be reversed only when there has been a clear abuse of discretion. *People v Dry Land Marina, Inc*, 175 Mich App 322, 325; 437 NW2d 391 (1989). An abuse of discretion will be found only when an unprejudiced person, considering the facts on which the trial court acted, would conclude that there was no justification or excuse for the ruling made. *People v Ullah*, 216 Mich App 669, 673; 550 NW2d 568 (1996). In *Dry Land Marina*, there was a jury of twelve and two alternates. Over defense objection, the trial court excused a deliberating juror who had broken her arm the preceding weekend, was having circulatory problems with her hand, was taking pain medication that made her groggy, and was possibly slated for sur-

gery. This Court found that the trial court did not abuse its discretion. *Dry Land Marina, supra* at 324.

In this case, the court was concerned about the juror's discomfort, was concerned that the rash might be contagious, and was advised that the juror's pharmacist told her to see her doctor that very day. We similarly conclude, especially because of the potential that the rash might have been contagious to the other jurors, that the trial court did not abuse its discretion in dismissing the juror.

Defendant relies on *United States v Patterson*, 307 US App DC 63; 26 F3d 1127 (1994), wherein the court reversed the defendant's conviction on the basis of the trial court's removal of a juror during deliberations. The juror had been having severe chest pains and had gone to her doctor with instructions to call the court after her appointment. Approximately three hours later, without having heard from the juror, the court excused her without determining whether she could continue and without, therefore, a finding of "just cause" as required by FR Crim P 23(b). The federal rule provides:

> Jury of Less than Twelve. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse a juror for just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

However, in *Patterson*, unlike in the case before us, the removal of the juror reduced the jury panel to

less than twelve, the defendant refused to stipulate a panel of less than twelve, and the trial court denied the defendant's motion for a mistrial.

Moreover, the analogous MCR 6.410(A), formerly MCR 6.102(A), does not contain a "just cause" requirement, but rather provides in pertinent part:

> Number of Jurors. Except as provided in this rule, a jury that decides a case must consist of 12 jurors. At any time before a verdict is returned, the parties may stipulate with the court's consent to have the case decided by a jury consisting of a specified number of jurors less than 12. On being informed of the parties' willingness to stipulate, the court must personally advise the defendant of the right to have the case decided by a jury consisting of 12 jurors. By addressing the defendant personally, the court must ascertain that the defendant understands the right and that the defendant voluntarily chooses to give up that right as provided in the stipulation. Even if the requirements for a valid waiver have been satisfied, the court may, in the interest of justice, refuse to accept a stipulation, but it must state its reasons for doing so on the record.

Defendant argues that a "just cause" requirement is mandated by a defendant's constitutional right to have the jury originally impaneled hear his case, and cites *United States v Jorn*, 400 US 470, 479, 484; 91 S Ct 547; 27 L Ed 2d 543 (1971), and *People v Gardner*, 37 Mich App 520, 526; 195 NW2d 62 (1972), in support. While those cases assert that a defendant has a constitutional right to have his case decided by that particular tribunal, they are primarily concerned with whether the Double Jeopardy Clause is implicated when a mistrial is declared without legal justification or defendant's consent. See *Dry Land Marina, supra*, at 325.

In any event, this Court has determined that, while a defendant has a fundamental interest in retaining the composition of the jury as originally chosen, he has an equally fundamental right to have a fair and impartial jury made up of persons able and willing to cooperate, a right that is protected by removing a juror unable or unwilling to cooperate. *Id.* at 326. Removal of a juror under Michigan law is therefore at the discretion of the trial court, weighing a defendant's fundamental right to a fair and impartial jury with his right to retain the jury originally chosen to decide his fate.

Here, defendant argues that the rash did not appear to be life-threatening or mind-incapacitating and that the trial court should have sent the juror to medical facilities in the building. We are unpersuaded. In this case, as in *Dry Land Marina*, "the decision . . . to excuse the ailing juror constituted a proper exercise of judicial discretion supported by fact and logic." *Id.*

Defendant next argues that, even if the court had the discretion to remove the juror, the court was without authority to recall an alternate juror who had been discharged. We again disagree. Defense counsel's waiver of any error in the removal of the itching juror also operates as a waiver of any error in replacing that juror with an alternate who had been discharged and was recalled. *Carter, supra.*

However, albeit conceding that his position is a minority position, defendant relies on MCR 6.411 (which, unlike MCR 6.410[A], provides for juries of more than twelve rather than juries of less than twelve), contending that the language of the rule is mandatory and precludes the court from reconstitut-

ing the jury once the alternates have been discharged. MCR 6.411 provides:

> Additional Jurors. The court may impanel more than 12 jurors. If more than the number of jurors required to decide the case are left on the jury before deliberations are to begin, the names of the jurors must be placed in a container and names drawn from it to reduce the number of jurors to the number required to decide the case. The jurors eliminated by this process *are to be discharged after the jury retires to deliberate.* [Emphasis added.]

Defendant again analogizes his argument, this time more successfully, to the comparable FR Crim P 24(c), amended April 29, 1999, effective December 1, 1999.[1]

Before the amendment, which did not take effect until after defendant's trial, FR Crim P 24(c) provided in pertinent part for alternate jurors as follows:

> The court may direct that not more than 6 jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, *prior to the time the jury retires to consider its verdict,* become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have

---

[1] FR Crim P 24(c)(3), as amended, provides in pertinent part:

> Retention of Alternate Jurors. When the jury retires to consider the verdict, the court *in its discretion may retain the alternate jurors during deliberations.* If the court decides to retain the alternate jurors, it shall ensure that they do not discuss the case with any other person unless and until they replace a regular juror during deliberations. If the alternate replaces a juror after deliberations have begun, the court *shall instruct the jury to begin its deliberations anew.* [Emphasis added.]

the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror *shall be discharged after the jury retires to consider its verdict.* [Emphasis added; see *Dry Land Marina, supra* at 328.]

We agree that the recall of a juror, once discharged, is in violation of the language in both the then existing FR Crim P 24(c) and MCR 6.411, and is therefore error by the trial court. See *Dry Land Marina, supra* at 328. However, noting that the language of both the Michigan rule and its federal counterpart is not constitutionally mandated and that the most substantial danger of a violation of either rule is possible coercion of the alternate by the existing panel members, *id.* at 328-329, this Court has agreed with "[t]he prevailing holding among the circuits," and held that "absent consent of the defendant, [recalling a juror] requires reversal of a conviction only when the defendant has been prejudiced by the procedure." *Id.* at 329. See also *People v Bettistea,* 173 Mich App 106; 434 NW2d 138 (1988).

Defendant argues that, because the jury deliberated approximately seven hours before substitution and only two hours after, the difference in time is evidence of jury coercion, and further argues that, because the jurors requested a rereading of the instructions distinguishing first-degree murder and second-degree murder right before delivering the verdict, they had already decided defendant was guilty. Even if defendant had not waived this error, *Carter, supra,* we find these claims to be speculative. Moreover, we are not persuaded that defendant has shown prejudice, and the evidence of guilt in this case was overwhelming.

Defendant's reliance on *United States v Lamb*, 529 F2d 1153 (CA 9, 1975), wherein the facts were somewhat similar, is unavailing. First, the *Lamb* court reversed not because of an actual showing of prejudice, but rather because of a finding that the mandatory language of the rule had been violated: "The mandatory provision of [FR Crim P 24(c)] having been violated, the period of time during which the substitute juror participated in the deliberations is essentially irrelevant." *Id.* at 1156, n 7. Additionally, the jury in *Lamb* had already reached a verdict of guilty that the trial court would not accept, significantly distinguishing that case. Further, in *Dry Land Marina*, this Court specifically rejected the reasoning in *Lamb*. Moreover, while not determinative in this case, we note that the federal rule was amended just seven months after defendant's trial to expressly provide for the retention and use of alternate jurors. See n 1, *supra*. Finally, the jury request for instructions on second-degree murder following the substitution of the alternate equally supports a conclusion the jury was fully deliberating the issues again rather than, as defendant would have it, coercing the alternate.

Defendant next argues that the trial court erred in not inquiring of the alternate juror whether she had discussed the case with anyone or formed any opinions regarding the case in her time away from the courthouse. Again, we conclude that this issue is waived. *Carter, supra*. As set forth in the beginning of this opinion, counsel expressly and repeatedly approved the entire procedure relative to the substitution of the alternate. In any event, before the alternate was chosen, the court fully instructed the jury with regard to the procedure the alternate was to fol-

low. When the alternate returned to the courthouse, the court specifically questioned her whether anyone had spoken to her about the case and whether she could think of any reason why she could not "fairly and reasonably deliberate on this case." We find that the court's question whether anyone had spoken to the juror impliedly includes the question whether she had discussed the case with anyone, and that the question whether she could think of any reason why she could not fairly deliberate includes whether she had formed any opinions about the case or had any other impediment to serving. We are convinced that the court's interrogation of the alternate juror and her responses established the alternate's fitness to serve as a juror in the case.

We also find that the alternate juror's absence from the courthouse on Thursday afternoon and Friday while the original jury deliberated was not crucial to the alternate's fitness to serve. In her absence, the court instructed the jury that it would not provide written statements to the jury for review, and it also reread the instruction concerning the burden of proof. The court photocopied the burden of proof instruction and gave it to the jury. It was, therefore, available to the alternate. The other instruction had no effect on the jurors because they were not allowed to have statements with them. Given the record in this case, any effect on the alternate due to instructions read in her absence is minor. We therefore find no error on the part of the trial court. See *Dry Land Marina, supra; United States v Hillard,* 701 F2d 1052 (CA 2, 1983).

Defendant's fourth issue on appeal with regard to the substitution of the juror is that the trial court

erred when, rather than instructing the jury to begin
its deliberations anew after the alternate was substi-
tuted, it instructed the jury to "go back, and I'm not
going to say go back to square one, but certainly you
will have to share with the [alternate] juror how you
have been deliberating . . . ." We agree with defendant
that the jury in such situations should be instructed
to begin deliberations anew. See, e.g., *State v
Sanchez*, 129 NM 284; 6 P3d 486 (2000). Indeed, FR
Crim P 24(c) now specifically requires that instruc-
tion. See n 1, *supra*. In *Dry Land Marina, supra* at
330, the only Michigan case to address this issue, and
then only indirectly, this Court cited with approval a
federal case wherein the trial court instructed the
jury to begin deliberations anew following the substi-
tution of an alternate juror. We therefore conclude
that the trial court erred in instructing the jury that it
need not begin deliberations anew.

Our Supreme Court has held that error in
instructing the jury is of constitutional magnitude.
*Carines, supra* at 761. Having concluded that the trial
court erred, and assuming that the error was forfeited
as opposed to waived, *Carter, supra*, we must deter-
mine if it was harmless. Forfeited constitutional error
will require reversal only when the error resulted in
the conviction of an actually innocent person or seri-
ously affected the fairness, integrity, or public reputa-
tion of judicial proceedings. *Carines, supra* at 774.

Here, the trial court affirmatively stated on the
record that the jury should not "go back to square
one." However, the record does not support a conclu-
sion that this error affected the outcome of the pro-
ceedings thereby affecting defendant's substantial
rights. The alternate sat through the entire trial, the

court instructed the jury to "share with the [alternate] how you have been deliberating," and nothing prevented the jury from beginning anew. See *Peek v Kemp*, 784 F2d 1479, 1484-1485 (CA 11, 1986). We have already determined that defendant's claim of an inherently coercive effect on the substituted juror, as found in *Lamb, supra*, is without merit. None of the facts in *Lamb*, the suspicion of a juror's feigned illness, or the court's refusal to accept the jury's verdict is present here. Because the facts in the instant case do not support a finding that the outcome of this case was determined by the court's erroneous instruction, we conclude the error is harmless.

Defendant's final claim is that the trial court improperly instructed the jury on defendant's theory of the case, which was mere presence, because it did not identify Gerald Spears as the shooter. We again disagree. The trial court instructed the jury pursuant to CJI2d 8.5, which provides that if the jury found that the defendant was present but did not participate in the killings, it could not find that the defendant committed the offenses. Even if jury instructions are imperfect, they do not create error if they fairly present the material issues to be tried and sufficiently protect the defendant's rights. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994). It was not material whether the jury believed that Spears was the shooter, only that defendant was not.

Affirmed.