COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MELVIN JAMES WOFFORD,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2015

No. 318642
Oakland Circuit Court
LC No. 2012-241569-FC

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant, Melvin James Wofford, appeals as of right his conviction of first-degree premeditated murder, MCL 750.316(1)(a) and (b). During the course of burglarizing the victim's, Thomas Gilmore's, place of business on June 22 or 23, 1993, defendant fatally strangled Gilmore. Defendant was sentenced to life in prison. We affirm.

## I. JURY DELIBERATIONS

### A. STANDARD OF REVIEW

Defendant first contends that he was denied due process when the trial court removed a juror during deliberations and replaced her with an alternate instead of granting a mistrial. We review the trial court's decision on a motion for a mistrial and decision to remove a juror for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003); *People v Tate*, 244 Mich App 553, 559-560; 624 NW2d 524 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (quotation marks and citation omitted).

### B. ANALYSIS

On the second day of jury deliberations, the jury sent a note to the court indicating that the jurors were 11 to 1, with no chance of the one changing his or her view. The court instructed the jury to resume deliberations in the hope that further discussion would result in a verdict. An hour later, the court received another note in which the jury indicated that the doubts of one of

the jurors were unreasonable, and requested advice regarding how to proceed. The court instructed the jury that, if it wished to communicate with the court, any note had to come from the foreperson. The court also reminded the jury that it must not let anyone know how the voting stands.

The next day, the court received several notes from the jury. The first noted stated that one juror was not cooperating, refused to deliberate or prove her vote, "she just wants a hung jury," and she had "looked up the phrase to see what it meant before" deliberations started. Another note stated: "We have a [juror] who SERIOUSLY doesn't understand what Reasonable Doubt is!! We have a hung jury [a]nd we need instructions!!! HELP!!!" The trial court reread the reasonable doubt instruction, reread the aiding and abetting instruction, and instructed the jury that it must follow the law and not obtain information from any outside source. The court also read a second deadlock instruction, encouraging the jurors to continue deliberations.

Two days later, an attorney appeared at court and indicated that one of the jurors—Ms. McGraw—had contacted him and said that she was being harassed and verbally abused. Defendant stated that he assumed McGraw was the holdout, and requested a mistrial because of the potential for a coercive verdict. Yet, the court noted that no one knew if McGraw was the holdout, and that for all they knew the vote could be equally divided at that point. The court noted that McGraw violated its explicit instructions about contacting anyone about the case, which constituted good cause to remove her. The court then replaced McGraw with an alternate, and gave the following instruction:

> We now have a reconstituted jury pool. A juror has been excused for cause and replaced with an alternate. This has nothing to do with your deliberations and you should not allow this fact to influence your deliberations in any way. You must start your deliberations from the beginning. You should not discuss among you, nor with the new juror, any of your prior deliberations. Again, you must begin your deliberations anew.

More than an hour and a half later, the jury returned its guilty verdict.

Defendant first contends that the trial court erred in removing the juror because, unlike other cases involving the removal of a juror, McGraw was not sick. See, e.g., *People v Tate*, 244 Mich App 553; 624 NW2d 524 (2001). However, defendant has not supported his argument that only severe sickness can serve as the basis for juror removal after deliberations have begun. See, e.g., *People v Harvey*, 167 Mich App 734, 744; 423 NW2d 335 (1988) (reasons for discharging a juror include "personal disability or legal disqualification."). In fact, MCL 768.18 provides: "Should any condition arise during the trial of the cause which in the opinion of the trial court justifies the excusal of any of the jurors so impaneled from further service, he may do so and the trial shall proceed, unless the number of jurors be reduced to less than 12." As this Court explained in *Tate*:

> [W]hile a defendant has a fundamental interest in retaining the composition of the jury as originally chosen, he has an equally fundamental right to have a fair and impartial jury made up of persons able and willing to cooperate, a right that is protected by removing a juror unable or unwilling to cooperate.

Removal of a juror under Michigan law is therefore at the discretion of the trial court, weighing a defendant's fundamental right to a fair and impartial jury with his right to retain the jury originally chosen to decide his fate. [244 Mich App at 562 (quotation marks and citation omitted).]

Also, the court rules broadly permit the trial court to retain alternate jurors during deliberations, presumably in case of removal. MCR 6.411.

Contrary to defendant's assertion on appeal, the trial court did not remove McGraw because she was a lone hold-out who was standing in the way of conviction. In fact, defendant's basic premise is flawed. Early on in the deliberations, the jury informed the court that they were 11 to 1. However, the jury did not reveal which way the majority was leaning or the identity of the hold-out. Several days of continued deliberation then ensued. As the trial court found, there was no evidence at the time of McGraw's removal what way the jury was leaning, or the potential division.

Moreover, the record clearly demonstrates that the trial court removed this juror because she flagrantly violated the court's instructions by discussing the deliberations with a non-juror. Neither party contests McGraw's blatant disregard for the court's instructions, nor that it implicated her ability to follow jury instructions. Thus, the trial court protected defendant's right to a fair and impartial jury "by removing a juror unable or unwilling to cooperate." *Tate,* 244 Mich App at 562.

Defendant, however, contends that the trial court still should have granted a mistrial because of the danger that the alternate juror would be influenced when faced with 11 jurors who were convinced of his guilt. Yet, as discussed *supra*, there is no evidence regarding what way the jury was leaning at the time of McGraw's removal. Thus, to conclude that there was only one hold-out, or that it was McGraw, is mere speculation. Significantly, the trial court properly instructed the newly configured jury that it must deliberate anew, and disregard its prior deliberations. See MCR 6.411; *Tate*, 244 Mich App at 567 ("the jury in such situations should be instructed to begin deliberations anew."). As we have recognized, "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). "Because it is . . . pure speculation that the alternate juror was coerced, we conclude that defendant was not prejudiced by the substitution of the alternate juror." *People v Mahone*, 294 Mich App 208, 218; 816 NW2d 436 (2011).

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant next contends that the evidence was insufficient to support his conviction. We review *de novo* a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010) (quotation marks and citations omitted). We resolve conflicts of the evidence

in favor of the prosecution, "and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *Unger*, 278 Mich App at 222. Furthermore, circumstantial evidence and reasonable inferences arising from them can constitute sufficient proof of the elements of a crime. *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

## B. ANALYSIS

The only element defendant challenges regarding his first-degree murder conviction is identity. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

The prosecutor's theory at trial was that the person who broke into the building also killed the victim. Although this theory involves multiple layers of inferences, it is supported with evidence. After the break-in, the victim was not seen or heard from until his body was discovered. Moreover, the DNA from the blood found on the workbench and tool room wall matched defendant's DNA. The hair on the duct tape near the point of entry also matched defendant's DNA. The jury could infer from this evidence that defendant entered through the metal-covered window, cut himself on the broken glass fragments, caught his hair on the duct tape that had secured the metal to the window, removed the saw, and dripped small quantities of blood on the workbench and wall. The DNA evidence established defendant's identity as the perpetrator of the break-in.

The similarity of footwear impressions near the victim's body, on the shovel found near the bent metal covering, and the metal covering further establish the common identity of the perpetrator. Furthermore, as the perpetrator of the break-in, defendant had a motive to kill the victim because the victim could identify him. The jury could infer that a stranger would have chosen immediate flight instead of murder, as the victim would not have recognized the perpetrator. Additionally, defendant had a motive to steal because the testimony indicated that he was chronically short of money in 1993. Defendant often borrowed money from coworkers and others. He also admitted to the grand jury that he might have given his car to his brother in payment of a loan. The victim's wallet was never found.

Moreover, although defendant was with another employee the night of the break-in, he left that person's house claiming he had something to do. When the coworker woke up in the morning, he found defendant asleep on the living room floor. The jury could infer that defendant committed the offenses between the time he left the house and returned. The jury also could have found relevant that defendant missed work after the murder, he was uninterested in a coworker's distress over the victim's death, and he was uncharacteristically ingratiating toward the police.

On appeal, defendant highlights contrary evidence, such as the fact that other DNA samples collected from the building did not match his DNA, he was excluded as the person who left the fingerprint or palm print on the vestibule door, the footwear he was wearing at the time of the police interview was not a match to the footwear impressions at the scene, the lack of eyewitnesses, and that the coworker—whose house defendant slept at—was intoxicated. However, these arguments involve the weight of evidence and the credibility of witnesses. "We

do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence[.]" *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). "[T]he prosecution is only required to produce sufficient evidence to establish guilt; it is not required to negate every reasonable theory consistent with a defendant's innocence." *People v Hardiman*, 466 Mich 417, 430; 646 NW2d 158 (2002).

## III. CONCLUSION

The trial court did not abuse its discretion in replacing a juror with an alternate or in declining to grant a mistrial. Sufficient evidence supported defendant's conviction. We affirm.

/s/ Pat M. Donofrio
/s/ Michael J. Riordan
/s/ Michael F. Gadola