*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHRISTOPHER DEWAYNE WHITLOCK, also
known as CHRISTOPHER DWAYNE WHITLOCK,

        Defendant-Appellant.

UNPUBLISHED
April 22, 2021

No. 341560
Oakland Circuit Court
LC No. 2017-263204-FH

## ON REMAND

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

In an order dated October 28, 2020, the Michigan Supreme Court vacated Part II and Part III-F of this Court's prior opinion in *People v Whitlock*, unpublished per curiam opinion of the Court of Appeals, issued May 9, 2019 (Docket No. 341560) (*Whitlock I*), and remanded this matter back to this Court for reconsideration. *People v Whitlock*, ___ Mich ___; 949 NW2d 716 (2020) (*Whitlock II*). Specifically, our Supreme Court directed this Court:

> to determine whether: (1) the admission of other-acts evidence pursuant to MCL 768.27a and *People v Watkins*, 491 Mich 450[; 818 NW2d 296] (2012), may have confused jurors regarding the nature of the charged acts, and if so, whether the potential for confusion of the issues substantially outweighed the evidence's probative value, MRE 406; and (2) the prosecutor's use of the forensic interviewer's testimony entitles the defendant to a new trial pursuant to *People v Thorpe*, 504 Mich 230 (2019). In all other respects, leave to appeal is DENIED, because we are not persuaded that the remaining questions presented should be reviewed by this Court. [*Whitlock II*, ___ Mich ___.]

On remand, we reverse, vacate defendant's convictions and sentences, and remand for a new trial.

# I. FACTUAL BACKGROUND

This Court previously articulated the relevant factual background as follows:

The complainant, CC, who is the daughter of defendant's girlfriend, was just short of 11 years old and in sixth grade at the time of defendant's trial. She testified at the trial that defendant was her mother's boyfriend and had moved into the family home. CC testified that defendant began calling her his secret girlfriend, and then began touching her vagina while tickling her, and asking her to tickle him back around his penis.

On one occasion, when CC's mother was gone and CC's brother was sleeping, defendant tickled CC legs under her clothes then sent her to bed in her bedroom and followed her. While CC was lying in bed, defendant asked if she ever wondered what his penis looked like and then took his belt off and made her look at it. Defendant asked if she wanted to touch it, and she did. CC testified that it felt "really weird and sort of hairy." Defendant dared her to kiss it and, when she said no, he kissed her vagina and started rubbing it. Defendant then asked if CC wanted him to kiss her as he kisses her mommy. When CC said yes, defendant kissed her with his tongue in her mouth. Defendant also asked her if she wanted to take a shower with him. While defendant was in CC's bed and about to tuck her in, defendant said, "Oh, don't tell your mom about this because then I'll go to jail."

On another occasion, when CC was cleaning up her room, defendant came in and told her to lift up her shirt. When she did, defendant pulled down her pants and underwear. As defendant was looking at CC's private parts, he told her they were pretty. CC recalled that defendant pulled down her pants on four or five different occasions. Another time, defendant came into CC's bedroom while CC was naked after having taken a shower and proceeded to watch CC get dressed. Defendant then asked CC if she wanted to watch him get dressed, and she said no.

CC testified that the last time something happened with defendant, she had been cleaning her room. Defendant came in and offered to help. When CC stood up on her bed, defendant rubbed up against her chest with his belt and his penis inside his pants. Defendant pulled down her pants and underwear and touched her vagina with his hand. He then touched her chest on top of her clothes. Defendant told CC that there was nothing to feel "weird" about, that she was beautiful, and that he loved her and her mom. Then he went to help her mom cook dinner.

CC then told her brother what had been going on, and he told her to tell their mom. When CC asked her mom if they could talk, they went into her mom's bedroom and CC told her mom some of the things that had happened. Defendant came in and asked if they needed anything, and they said no. Then CC and her mom took defendant to work. After that, they went to the police station, where her mom talked to a police officer. The next day, [Jennifer Yemec, Children's Protective Services Investigator for the Department of Health and Human Services] came to the house and CC told Jennifer what had happened. She also went to Care

House and talked to [Brittany Bartkowiak, Child Forensic Interviewer for Care House].

Defendant was ultimately convicted by a jury of three counts of CSC-II, and was sentenced as a fourth-offense habitual offender to 15 to 50 years' imprisonment. [*Whitlock I*, unpub op at 1-2.]

On remand, we now reconsider whether admission of other-acts evidence may have confused jurors regarding the nature of the charged offenses, and if any such confusion outweighed the evidence's probative value, and whether Bartkowiak's testimony entitles defendant to a new trial under *Thorpe*.

## II. OTHER-ACTS EVIDENCE

Previously we concluded that the challenged bad-acts evidence presented by the prosecution was admissible to show propensity under MCL 768.27a, and that its probative value was not outweighed by the risk of unfair prejudice under MRE 403. *Whitlock I*, unpub op at 3-4. On remand, we conclude that the jurors were never informed which of the allegations of improper sexual contacts actually underlay the three criminal charges, and which were offered only to provide background, show propensity, or explain why the complainant did not report the abuse sooner. This lack of differentiation, or possible confusion, resulted not so much from the mere introduction of the challenged bad-acts evidence, but from the lack of clarifying instructions. However, defense counsel expressly declined an invitation to request such clarification for the jury, thus waiving appellate objections. Thus, reversal on this basis is not warranted.

We reiterate that,

MCL 768.27a, which supersedes MRE 404(b), provides that other-acts evidence is admissible:

[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [MCL 768.27a(1).]

In sum, MCL 768.27a allows the admission of other-acts evidence regarding other sexual abuse committed by defendant against minors to prove that defendant has the propensity to commit the charged offense. [*Watkins*, 491 Mich at 470]. Therefore, CC's testimony regarding defendant asking CC if she would like to see his penis, defendant exposing his penis to CC, defendant having CC touch his penis, defendant kissing CC on the lips like he would kiss her mother, defendant touching CC's chest and breasts, defendant removing CC's clothes and

looking at her vagina, and defendant touching CC's vagina with his mouth or hands would be admissible under MCL 768.27a for any matter to which it was relevant, even as propensity evidence.

MCL 768.27a is, however, subject to balancing under MRE 403, meaning that evidence admissible under MCL 768.27a may be excluded if " 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . .' " *Watkins*, 491 Mich at 481, quoting MRE 403.  [*Whitlock I*, unpub op at 2-3 (footnotes omitted).]

In his supplemental brief on remand, defendant now argues that the bad-acts evidence at issue was not inadmissible, including to show propensity, under MCL 768.27a, but that it was confusing, and therefore unfairly prejudicial under MRE 403.  However, defendant does not specify the specific testimony that ostensibly confused the jury, instead suggesting that every allegation of sexually related conduct that the complainant attributed to him that did not establish an element of a charged offense, including "two . . . uncharged acts" that were "the exact same crimes for which [defendant] was charged and convicted," had that effect.

Not only did our Supreme Court in *Watkins* provide a nonexclusive list of considerations for a trial court to weigh when balancing the probative value versus the prejudicial effect of the evidence in question, see *Watkins*, 491 Mich at 487-488, it also emphasized the role of jury instructions in preventing the misuse of evidence admitted under MCL 768.27a, setting forth "CJI2d 20.28a, the standard instruction on evidence of other acts of child sexual abuse" as a "final tool":

(1) The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant with [a minor / minors] for which [he / she] is not on trial.

(2) Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed those acts.

(3) If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the [offense / offenses] for which [he / she] is now on trial.

(4) You must not convict the defendant here solely because you think [he / she] is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty.  [*Watkins*, 491 Mich at 490.]

In this case, the trial court did provide virtually verbatim the instruction that our Supreme Court set forth in *Watkins*.  However, our further review of the record confirms that the jurors were given no coherent basis for distinguishing the alleged acts of vaginal contact underlying two of the charges, or the alleged act of penile contact underlying the third charge, from such alleged contacts that did not underlie any of the charges.  Indeed, the presentation of proofs and the instructions actually given to the jury offered the jurors little opportunity to distinguish the evidence directly pertaining to the elements of the charged offenses from that evidence providing context, showing

propensity, or explaining the victim's delay in reporting the abuse. Whether defendant was ultimately charged in connection with distinct acts, or with multiple acts put forward as continuous conduct for purposes of proving distinct theories of guilt (i.e., multiple vaginal contacts to prove one such charge, and multiple penile contacts to prove another), the jury should have been informed which allegation or allegations constituted the factual bases for each charge, and which allegations were presented for reasons other than proving the elements of any charge.

However, despite the opportunity, defense counsel expressly declined to ask for any clarifying instructions, and therefore reversal is not warranted on this basis. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (specific agreement with the trial court's handling of an instructional issue extinguishes appellate objections); *People v Tate*, 244 Mich App 553, 559; 624 NW2d 524 (2001); *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995) (a defendant may not assign error on appeal to something defense counsel deemed proper at trial).

For Counts 1 and 2, the trial court instructed the jury that finding defendant guilty required proof beyond a reasonable doubt that, among other things, "defendant intentionally touched [CC's] vagina and/or inner thigh or the clothing covering that area."[1] For Count 3, the court specified whether "defendant intentionally made [CC] touch his penis or the clothing covering that area."

After the instructions were given, but before deliberations began, a juror wrote a note with the following observation or suggestion: "'Count two, appears to have a typo. Should read kiss not touched, second element.'" The trial court responded as follows: "I've discussed it with both counsel and we all agree that a kiss is touch, it's just whatever part of the body is touching. It could be anything . . . . Consider all the instructions as a whole but a kiss is a touch." Both attorneys concurred on the record. A second juror note was then given to the trial court, which read: "'What is the difference between count one and two, they are written as the same[?]'" The trial court then stated:

> We had a brief discussion here at the bench. It's pretty clear that what happened here is that the defendant . . . allegedly engaged in more than three touching allegations. And, so the prosecutor talked about more than one and yet in the instructions there was no—this is the law in Michigan, it doesn't ask for specifics and so the prosecutor doesn't have any specifics in the actual count other than as he detailed a touching of the vagina or inner thigh for counts one and two and then count three the touching of the defendant's penis. So, I think we are in agreement of that. So, they should probably be able to figure it out in there. If not,

---

[1] To inform the jurors of the elements that had to be proved beyond a reasonable doubt for Counts 1 and 2, the trial court both times specified as follows:

First, that at the time of the alleged act the defendant was 17 years of age or older. Second, that the defendant intentionally touched [CC]'s vagina and/or inner thigh or the clothing covering that area. Third, that this was done for sexual purposes or could reasonably be construed as having been done for sexual purposes. Fourth, that [CC] was less than 13 years old at the time of the alleged act.

they'll send us a note where they don't understand, but basically because time is not an element, he's charged with these, it wasn't described in the closing I don't think as to specifically which statements the victim made that were the charged counts. And, I don't think either of you really clarified that.

The trial court asked defense counsel and the prosecution if either wished "for any additional instructions . . . or are you satisfied to just wait and hear from the jury?" Both defense counsel and the prosecution indicated they were satisfied with the instructions. The court then stated "for the record" that "we have two really experienced lawyers and if they're satisfied, I'm satisfied. So, we're just going to wait and see if we hear from the jury and when we do we'll let you know." Again, we conclude that despite the fact that clarification would have been helpful, where defense counsel expressly declined to ask for any clarifying instructions, this issue has been waived for appellate review.

Regardless, as discussed *infra*, defendant is entitled to a new trial. We therefore caution the trial court and the parties on remand to consider carefully differentiating evidence of sexual contacts offered to establish the factual bases for the criminal charges from evidence of sexual contacts offered for other reasons.

### III. FORENSIC INTERVIEWER'S TESTIMONY

Previously, we concluded that where the prosecutor summarized, and commented on, Bartkowiak's testimony during closing arguments,

> stating that the forensic interviewer is not there to confirm or prove the allegations; rather, she is a neutral third party following the state-mandated interview protocol in order to test other hypotheses that might disprove the allegations. Again, it is proper for the prosecution to comment upon, and draw inferences from, any witness's testimony. [*People v*] *Mullins*, 322 Mich App [151,] 173[; 911 NW2d 201 (2017).] [*Whitlock I*, unpub op at 9.]

On July 11, 2019, two months after we originally decided this matter, our Supreme Court decided *Thorpe*. In *Thorpe*, our Supreme Court held that an expert witness may not offer an opinion on whether a complainant was sexually assaulted when that expert witness's opinion is based on their assessment of the complainant's truthfulness, or when their opinion is based on what the complainant told the expert witness. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). An expert witness's opinion becomes "objectionable when it is solely based on what the victim told" the expert witnesses because a "jury is in just as good a position to evaluate the victim's testimony[.]" *Id.* Our Supreme Court ultimately held that it was plain error affecting the defendant's substantial rights when an expert offered the opinion that the complainant "suffered 'probable pediatric sexual abuse'. . . based solely on her own opinion that [the complainant's] account of the assaults was 'clear, consistent, detailed and descriptive.' " *Id.* at 262 (quotation marks omitted). In a companion case, the Court held that it was "more probable than not that a different outcome would have resulted without [an expert's] testimony that children lie about sexual abuse 2% to 4% of the time," where that expert "also identified only two specific scenarios in his experience when children might lie, neither of which applies in this case." *Id.* at 259. The Court further concluded that, although the expert "did not actually say it, one might reasonably

conclude on the basis of [the expert's] testimony that there was a 0% chance [the complainant] had lied about sexual abuse," and thus that the expert "for all intents and purposes vouched for [the complainant's] credibility." *Id.*

In this case, the prosecution expressly declined to ask the trial court to qualify Bartkowiak as an expert, but, nevertheless, elicited from her that she had been "qualified as an expert before in forensic interviewing." There can be little doubt that the jury looked upon Bartkowiak's testimony as authoritative. We previously summarized Bartkowiak's testimony as follows:

> Bartkowiak testified that a forensic interview is designed to be "truth-seeking, developmentally sensitive, and unbiased." Bartkowiak explained that pursuant to the Michigan Forensic Interviewing Protocols, forensic interviewers "generate a set of alternative hypotheses" to aid the investigation by ruling out those alternatives if possible. In this case, there were four alternative hypotheses: nothing happened; defendant was the wrong suspect; the touches were either accidental or playful; and the child had witnessed these touches done to someone else. Bartkowiak testified that she did rule out all of these alternatives during her interview with CC. Bartkowiak explained that in the event that the child makes a disclosure of abuse, the interviewer first asks the child to say everything from the beginning to the end before asking questions and clarifying what the child said. Then they start with open-ended questions and get more specific as the interview continues because children are suggestible. [*Whitlock I*, unpub op at 9.]

On the basis of the foregoing, we now conclude that Bartkowiak's testimony about being on a "truth-seeking" mission, thus employing "developmentally sensitive" interview techniques intended to avoid bias or suggestiveness, and about generating—and ruling out—four "alternative hypotheses" covering the possible factual scenarios whereby CC's accounts of sexual abuse would have been false or otherwise inaccurate, runs afoul of the rule announced in *Thorpe*. The error in the admission of this testimony was compounded by the prosecution's closing argument, where it emphasized that "[Bartkowiak] . . . was able to rule out all those other alternative hypotheses" that would have revealed it if CC "had been making this up or just fabricating it." To be clear, Bartkowiak's testimony itself, as well as the prosecutor's argument relating to Bartkowiak's testimony, constituted improper bolstering of the complainant's credibility. Under the guidance provided by *Thorpe*, this was plain error, and because the prosecution's case against defendant overwhelmingly depended on the complainant's credibility, the improper bolstering seriously affected the fairness or integrity of the proceedings. See *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). Therefore, defendant is entitled to a new trial.

We reverse, vacate defendant's convictions and sentences, and remand for a new trial. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan