# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROY LEE BLACK,

      Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 313449
Wayne Circuit Court
LC No. 12-000945-FC

Before: TALBOT, C.J., and MURPHY and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for the shooting death of Marlon Jones. On appeal, defendant challenges the trial court's failure to warn him of the prejudicial effect of appearing before the jury in his jail uniform and the seating an alternate juror on the second day of deliberations. This Court previously remanded to develop the record in relation to the alternate juror issue. *People v Black*, unpublished order of the Court of Appeals, entered March 7, 2014 (Docket No. 313449) (*Black* Order). We now discern no prejudicial error in the conduct of defendant's trial and therefore affirm.

## I. BACKGROUND

On the afternoon of January 4, 2012, Marlon Jones drove to Superior Street in the city of Detroit with his friend Eugene Rice to purchase drugs. Rice exited the vehicle and traversed a vacant lot to meet a drug dealer. Defendant then drove up alongside Jones's vehicle, with Gregory Currie in the passenger seat. All four men were acquainted, but defendant and Jones had a falling out the previous year. Defendant and Rice exchanged greetings as Rice returned to Jones's car. Despite the presence of witnesses, defendant removed a handgun from his left sleeve and shot Jones in the head three times. Rice ran away and called 911. Currie claimed that he was so intoxicated that he slept through the incident, barely hearing the gunshots. Another witness, George O'Neal, testified that he saw the shooting from the porch of a vacant home he had visited that day to use heroin. Authorities arrived approximately 30 minutes later and pronounced Jones dead at the scene.

## II. JAIL GARB

On the first day of the jury trial, defendant appeared at the courthouse in a yellow jumpsuit bearing the word "jail." The trial court sua sponte questioned defendant about his apparel, and defendant explained that his jailhouse jumpsuit was the only clothing he had. It appears that defendant had traded his street clothes for "[m]oney for the commissary." The court offered defendant a suit, shirt, and tie that he could wear during trial, but defendant refused. Upon questioning, defendant informed the court that he was 57 years old, had been in court twice before, and had worn civilian clothes on at least one of those occasions. The court queried, "But now you don't want to wear civilian clothes?" and defendant responded, "What's wrong with these your Honor." The court stated its belief that defendant was "creating appellate issues" and "strongly recommend[ed] that [defendant] wear civilian clothes," but declared that defendant was old enough and sufficiently familiar with the criminal justice system to make his own decision regarding his apparel.

Defendant now contends that the court denied him due process of law by failing to explain the prejudicial effect of wearing his jail uniform in front of the jury.

> With respect to a defendant's physical appearance during trial, we . . . review the trial court's decision for an abuse of discretion. We defer to the trial court's superior opportunity to observe the defendant and to determine whether the defendant's appearance prejudicially marks him or her as a prisoner. [*People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009), citing *People v Harris*, 201 Mich App 147, 151-152; 505 NW2d 889 (1993).]

"A criminal defendant generally has the right to appear before the court 'with the appearance, dignity, and self-respect of a free and innocent man.' " *Payne*, 285 Mich App at 187, quoting *People v Shaw*, 381 Mich 467, 474; 164 NW2d 7 (1969). A defendant is " 'entitled to wear civilian clothes rather than prison clothing at his trial' " and " '[i]t is improper' " to bring the defendant before the jury " 'clothed as a convict.' " *Shaw*, 381 Mich at 474, quoting 21 Am Jur 2d, Criminal Law, § 239, pp 275-276. Accordingly, "[a] defendant's timely request to wear civilian clothing must be granted." *Harris*, 201 Mich App at 151. However, failure to raise a timely objection to wearing jail clothing "waives any defects as to a defendant's appearance before the jury." *People v Harris*, 80 Mich App 228, 230; 263 NW2d 40 (1977). Moreover, "[a] prisoner who voluntarily *chooses* to stand trial in jail clothing cannot be heard to complain on appeal." *Id.* at 231 (emphasis added).

Defendant waived any claim of error by rejecting the court's offer of civilian clothing and choosing to proceed to trial in his jail jumpsuit. Defendant's decision was an "intentional relinquishment or abandonment" of his right to appear before the jury dressed as a civilian in the face of the trial court's "stong[] recommend[ation]" that he wear something else. *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000). Defendant's failure to object to wearing prison clothes, and indeed conscious decision to remain in his jumpsuit, was "sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v Williams*, 425 US 501, 512-513; 96 S Ct 1691; 48 L Ed 2d 126 (1976). Simply stated, defendant cannot explicitly choose to wear his jail-issued uniform and then complain that the court unconstitutionally forced him to do so.

Even if defendant had not waived his claim of error, he would not be entitled to relief. The trial court bore no duty to specifically warn defendant about the danger of prejudice facing a criminal defendant appearing before the jury in jail garb; that duty rests with defense counsel. As stated by the United States Supreme Court:

> Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. . . . Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system. [*Estelle*, 425 US at 512.]

Defendant has not contended that defense counsel failed in his duty to advise him of the importance of appropriate attire at trial. We discern no error in this regard.

## III. SEATING OF AN ALTERNATE JUROR

At the close of arguments, the trial court instructed the jury and then randomly chose two jurors—Andrew Nagy and Aed Dudar—to excuse as alternates. The remaining jurors retired to the jury room to begin deliberations. They were dismissed for the day a half hour later. The following morning, October 12, 2012, court was allegedly delayed "several hours" because one of the jurors failed to appear. The court did not properly document subsequent events, but it is clear on the preremand record that one of the alternate jurors—Dudar—was called back to court to deliberate with the remaining jurors. At 1:24 p.m., this newly constituted jury returned to the courtroom to enter its verdict.

Defendant contended on appeal that the trial court violated his constitutional right to an unbiased jury, and the strictures of MCR 6.411, by seating an alternate juror without ensuring that the alternate juror had not been subject to outside influence in the interim. Upon initial review, this Court "remanded to the trial court for an evidentiary hearing to develop the record with respect to the issue of an alternate juror being used during deliberations," and "direct[ed] the focus of the evidentiary proceedings to include the trial court's compliance with the procedures set forth in MCR 6.411." *Black* Order (Docket No. 313449).

On remand, the trial court conducted its evidentiary hearing over five days in October and November 2014. Both Dudar and Nagy testified, as well as the jury foreman, Joseph Bauman. The prosecutor, defendant's trial counsel, and defendant also took the stand. The trial court ultimately concluded that it had followed the procedures of MCR 6.411 and the jury had "rendered a fair and unanimous verdict."

Defendant now challenges the trial court's factual findings, with some merit, and continues to argue that the court was lax in its duties. He further complains that he was excluded from the October 12, 2012 unrecorded proceedings during which the court and the attorneys decided how to resolve the missing juror situation. The lack of consultation deprived defendant of counsel, he asserts. In considering these issues, we begin with a general discussion of the applicable law.

A criminal defendant has the right to a fair and impartial jury. US Const, Am VI; Const 1963, art 1, § 20. This includes "a fundamental interest in retaining the composition of the jury as originally chosen." *People v Tate*, 244 Mich App 553, 562; 624 NW2d 524 (2001). It is not always possible to maintain the integrity of the original jury. And defendants have "an equally fundamental right to have a fair and impartial jury made up of persons willing to cooperate, a right that is protected by removing a juror unable or unwilling to cooperate." *Id.*; see also MCL 768.18 (the trial court may excuse jurors for "any condition aris[ing] during the trial . . . which in the opinion of the trial court justifies the excusal . . . from further service"). Jurors who are unable or unwilling to deliberate may be replaced with an alternate. E.g., *People v Mahone*, 294 Mich App 208, 215-217; 816 NW2d 436 (2011).

The power to impanel extra jurors at the start of a criminal trial arises from MCR 6.411, which provides:

> The court may impanel more than 12 jurors. If more than the number of jurors required to decide the case are left on the jury before deliberations are to begin, the names of the jurors must be placed in a container and names drawn from it to reduce the number of jurors to the number required to decide the case. The court may retain the alternate jurors during deliberations. If the court does so, it shall instruct the alternate jurors not to discuss the case with any other person until the jury completes its deliberations and is discharged. If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew.

"The trial court's decision whether to remove a juror is reviewed for an abuse of discretion," while "[c]onstitutional issues, such as the right to a fair trial, are [generally] reviewed de novo." *Mahone*, 294 Mich App at 215. Defendant failed to preserve his challenge with a timely objection, first raising the issue on appeal. Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764-765, 774; 597 NW2d 130 (1999). But we review for clear error defendant's challenges to the trial court's factual findings at the hearing on remand. MCR 2.613(C).

## A. MCR 6.411

MCR 6.411 permits criminal courts to "impanel more than 12 jurors." The trial court was therefore within its right to impanel 14 jurors at the onset of trial. The trial court also complied with MCR 6.411's mandate to reduce the jury size to 12 prior to deliberations through random selection. At the close of trial, the court read final instructions to the jury. The court continued:

> Now ladies and gentlemen as you have already been informed the jury can only have 12 members to deliberate and arrive at a verdict.[1]

> At this time, my clerk will blind draw the names of two jurors who will be excused with the thanks of the Court.

MCR 6.411 next describes that "[t]he court may retain the alternate jurors during deliberations." The trial court did not technically retain Dudar and Nagy. Instead, the court excused the alternate jurors, telling them "you are free to go."[2] This Court's decision in *Tate* provides an example of how a court should proceed on the record to retain alternate jurors. In *Tate*, the trial was heard by 13 jurors, who had been instructed from the beginning not to discuss the case with anyone. *Tate*, 244 Mich App at 555. During final instructions, the court informed the panel that one member would be "blind drawn" to be removed from deliberations. *Id.* The court continued:

> However, I am going to ask that person whose name is drawn to please give me your name and a number where you can be reached tomorrow during the day, so that in the event that we are unable to continue with the 12, we will be able to call that alternate in and have that person deliberate. [*Id.* at 555-556.]

Here, the court excused the alternates with no indication on the record that they might be recalled. Indeed, neither Dudar nor Nagy could recall such information being given even off the record when questioned at the evidentiary hearing.

The court rule continues by providing that if the court exercises its discretion to retain the alternate jurors, it must "instruct [them] not to discuss the case with any other person until the jury completes its deliberations and is discharged." The trial transcript reveals that such instructions were given to the entire jury at the beginning of trial:

> Now until this case is submitted to you at the conclusion of the Court's final instructions you must not discuss it with anyone, not even with members of your families or your fellow jurors.

> After it is submitted to you, you may discuss it only when the Court so instructs you and only in the jury room in the presence of all your fellow jurors.

* * *

---

[1] Our review of voir dire and opening jury instructions revealed that the court had not previously advised the jury on the record that two members would later be selected as alternates while the other 12 would deliberate the case.

[2] Defense counsel testified that he recalled the court "reminded [the alternate jurors] that they still could be called and they should be available and not to discuss the case." This testimony was corroborated by no other witness and contradicts the transcript of the proceedings.

If anyone attempts to say anything to you or in your presence about this case, tell them that you are on the jury trying the case and ask them to stop.

No complementary instruction appears in the transcript of the final jury instructions. At the evidentiary hearing, Nagy recalled that the judge instructed him not to discuss the case with others, but he was unsure whether the trial court gave this instruction before or after he and Dudar were chosen as alternates and excused. He did not remember personally speaking to the judge or the court clerk before he left the building. Dudar believed the judge provided additional instructions when he was released as an alternate: "I think I was told not to discuss the case with anyone any family members or anybody outside of the courtroom outside of the jury room besides the jurors."

This Court has previously found a trial court's initial instructions not to discuss the case sufficient to inform an alternate juror that has been retained by the court. See *Tate*, 244 Mich App at 555. In *Tate*, however, the court had also given a specific instruction to retain the alternate jurors until the completion of deliberations. *Id.* at 555-556. When the alternate juror was recalled to join the jury in *Tate*, the court engaged in an inquiry on the record to ensure the juror had not discussed the case outside of court and had not been influenced. *Id.* at 557. Given the starkly different circumstances in this case, we cannot find the jury's initial instruction sufficient to advise the alternate jurors.

Finally, MCR 6.411 demands that the court "instruct the jury to begin its deliberations anew" when an alternate juror joins their ranks. Absent a transcript of that portion of the proceedings, the attorneys questioned Dudar and Bauman, the jury foreman, to piece together events. Dudar did not recall any instructions being given in the courtroom; he remembered only being taken into the jury room. Bauman testified that the entire jury was brought into the courtroom and seated in the jury box. Bauman continued, "I believe the Judge gave us instruction as to how we were suppose[d] to go about with our deliberations but I don't remember exactly what he said." The prosecutor mirrored Bauman's memory: "I believe that the rest of the jurors were brought out and then they were all instructed to go in and deliberate together." As did defense counsel: "He advised them [the jury assembled in the jury box] . . . that this alternate juror would now become part of the jury. And there was some discussion as to how they would proceed. I don't have any independent memory of the exact verbiage but I can say . . . I was satisfied." Defense counsel reiterated that he was satisfied with the instructions after acknowledging his awareness that the jury should be directed to restart deliberations. While such an instruction was likely given, we have no way to verify this on the record as it stands.

Yet, relief is not warranted in this case. The trial court's failure to properly inform the alternate jurors that they were being retained for service and to instruct the alternates upon excusal not to discuss the case with anyone, and even the potential error in failing to advise the jury to start deliberations anew with the newly seated juror, were not outcome determinative. At the hearing, Dudar expressly denied that he had spoken to anyone about the case between being released and then recalled to join the deliberating jury. Accordingly, the failure to properly retain and instruct Dudar in this regard did not affect the jury deliberations.

-6-

Moreover, the jury did not begin their substantive deliberations until Dudar was seated. Bauman testified that in the half hour the jurors met on October 11, 2012, the jury selected him as the foreman, they read the instructions, and "discussed what evidence we may want to ask to have recalled for us to see." The jury "had not even really started any meaningful deliberations before [they] were excused." Bauman indicated that Dudar approved the jury's choice of foreman and was fully involved in the deliberation process. The jury began discussing the charges against defendant and taking polls on his guilt only after bringing Dudar up to speed. Dudar was present when the jury "spent a lot of time going over" the elements of the offenses. As a result, this error was also harmless. See *Tate*, 244 Mich App at 567-568 (finding harmless error even in light of the court's specific instruction *not* to begin deliberations anew).[3]

## B. DEFENDANT'S RIGHT TO BE PRESENT

Defendant also contends that he was excluded from the courtroom on the morning of October 12, and that defense counsel failed to consult with him. As a result, defendant complains that his constitutional rights to be present during the proceedings and to effective assistance of counsel were violated. This issue was not raised until the third day of the evidentiary hearing. Defendant testified that he did not learn about the missing witness situation until noon when a deputy visited defendant in the holding cell, and was not returned to the courtroom until the verdict was read. Defendant claimed that his lawyer never discussed the issue with him. Defense counsel, on the other hand, "believe[d] [his] client was there" when the alternate juror arrived and was impaneled. Defense counsel admitted that he did not consult with his client about proceeding with "13 jurors" versus recalling the alternate and dismissing the late juror. However, he could not recall whether he had discussed the situation with defendant in any form.

A criminal defendant has both a statutory and constitutional right to be present during his trial. *People v Kammeraad*, 307 Mich App 98, 116-117; 858 NW2d 490 (2014), citing MCL 768.3, and *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984). This right extends to "all critical stages of the trial." *Rushen v Spain*, 464 US 114, 117; 104 S Ct 453; 78 L Ed 2d 267 (1983). The constitutional right is implied in the Confrontation, Due Process, and Impartial Jury Clauses. *Kammeraad*, 307 Mich App at 117.

> A defendant has a right to be present during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected. [*Mallory*, 421 Mich at 247.]

---

[3] Defendant argues that because "a constitutional right [was] invaded," the prosecution should bear the burden of demonstrating an absence of prejudice. However, when an issue is unpreserved, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice," regardless of whether the issue involves a constitutional right. *Carines*, 460 Mich at 763-764, quoting *United States v Olano*, 507 US 725, 734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

It has also been described that a criminal defendant has a due process right to be present during his criminal proceedings " 'whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge.' " *United States v Gagnon*, 470 US 522, 526-527; 105 S Ct 1482; 84 L Ed 2d 486 (1985), quoting *Snyder v Massachusetts*, 291 US 97, 105-106; 54 S Ct 330; 78 L Ed 674 (1934). A defendant's absence even at a critical stage of the proceeding does not mandate automatic reversal; rather, the defendant must establish "whether there is 'any reasonable possibility of prejudice' " to merit relief. *People v Morgan*, 400 Mich 527, 536; 255 NW2d 603 (1977).

No precedential opinions in this state categorize as a "critical stage" a proceeding in which the court decides how to proceed when a juror fails to appear during deliberations. The California Court of Appeals has declared that the seating of alternate jurors is not a critical stage, and there is no constitutional violation even defense counsel is absent when a decision is made. See *People v Dell*, 232 Cal App 3d 248, 257; 283 Cal Rptr 361 (1991). The Colorado Court of Appeals agreed with this description, stating "While the selection of a jury is a critical stage of the proceeding at which a defendant or his counsel has a right to be present, replacing a juror with an alternate is more in the nature of an administrative task," and a defendant must show prejudice from his absence in order to merit relief. *People v Anderson*, 183 P3d 649, 651 (Colo App, 2007). Similar results have been reached in Kansas and Nebraska. See *State v Davis*, 284 Kan 728; 163 P3d 1224 (2007) (holding that a trial court conference with a juror charged with bias is a critical stage, but suggesting that the substitution of a juror for a benign reason like illness is not); *State v Marks*, 286 Neb 166, 173; 835 NW2d 656 (2013), citing *Snyder*, 291 US 97 (finding that defendant's presence would have been "useless" and therefore was not constitutionally mandated where defense counsel was present in the courtroom and agreed to the procedure to substitute an alternate juror for a sitting juror who "would have suffered a harm had he continued to serve").

While initial jury selection is a critical stage of the proceedings, there is no legal support for describing as critical the juror substitution proceeding in this case. The substitution was more akin to an administrative task following the absence of a seated juror. And defendant's attorney was present to protect his rights if need be. Accordingly, we find no prejudicial violation of defendant's right to be present.

## C. ASSISTANCE OF COUNSEL

Defendant also challenges defense counsel's failure to consult with him before agreeing to recall an alternate juror. Defendant failed to preserve this issue by seeking a new trial or an evidentiary hearing on ineffective assistance grounds.[4] As a result, our review is limited to mistakes apparent on the existing record. See *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002), citing *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

---

[4] The evidentiary hearing on remand was limited to the trial court's compliance with MCR 6.411. No record was created regarding counsel's performance.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012). We review the trial court's factual findings for clear error, and constitutional determinations de novo. *Id.*, citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

"Most claims of ineffective assistance of counsel are analyzed under the test developed in *Strickland* [*v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]." *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). Under *Strickland*, it is a defendant's burden to demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and, (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 US at 694; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The defendant must rebut the strong presumption that counsel rendered adequate assistance. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012); *LeBlanc*, 465 Mich at 578. The United States Supreme Court described in *United States v Cronic*, 466 US 648, 659-660; 104 S Ct 2039; 80 L Ed 2d 657 (1984), that there are "three rare situations in which the attorney's performance is so deficient that prejudice is presumed." *Frazier*, 478 Mich at 243.

Defendant characterizes his claim as falling under the first *Cronic* scenario: the complete denial of counsel at a critical stage in the proceeding. *Cronic*, 466 US at 659-660. This simply is not accurate. Defendant had counsel and that counsel was present at the proceeding. Defendant's real complaint is the failure of counsel to consult with him. This falls squarely under *Strickland*.

"[T]he Sixth Amendment right to effective assistance of counsel should not be translated into a right to be present at counsel's side wherever and whenever instantaneous consultation may be helpful to the defense." *Mallory*, 421 Mich at 266. But when defendant cannot be at counsel's side, there are times when defendant needs to be consulted. "From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland*, 466 US at 688. "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.' " *Florida v Nixon*, 543 US 175, 187; 125 S Ct 551; 160 L Ed 2d 565 (2004).

There is no legal support for treating the decision made in this case—whether to call an alternate juror to replace a late juror—so important that counsel was required to consult with defendant. This was not a matter of "overarching defense strategy." And there was no reason to assume that the jurors had gotten far in their deliberations given that they had only been in the

jury room for half an hour.  This was a simple administrative decision made to avoid further delay of the trial.  Accordingly, we discern no error in counsel's performance.

We affirm.


/s/ Michael J. Talbot
/s/ William B. Murphy
/s/ Elizabeth L. Gleicher