*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ASHANTI RADEEF GUY,

        Defendant-Appellant.

UNPUBLISHED
December 19, 2019

No. 344388
Calhoun Circuit Court
LC No. 2017-001036-FC

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

PER CURIAM.

Defendant, Ashanti Radeef Guy, appeals as of right his jury convictions of two counts of first-degree criminal sexual conduct (CSC-I) under MCL 750.520b(1)(b)(*i*) (same household), two counts of first-degree CSC-I under MCL 750.520b(1)(a) (victim under 13 years of age), and one count of third-degree CSC (CSC-III) under MCL 750.520d(1)(b) (force or coercion). The trial court sentenced defendant to 25 to 50 years' incarceration for his two CSC-I convictions involving a child under 13, 285 months to 50 years' incarceration for his remaining two CSC-I convictions, and 10 to 15 years' incarceration for his CSC-III conviction. We affirm.

## I. BACKGROUND

For a period of five years, defendant, who was an adult father figure to the victim, sexually assaulted her. Defendant began living with the family of the victim when she was three years old. At trial, the victim testified to at least five instances of sexual assault. The first assault occurred in the victim's bedroom when she was 11 years old. After digitally penetrating the victim's vagina and performing cunnilingus, defendant engaged in penile-vaginal penetration. The victim's mother was not home and the victim obeyed defendant because she was afraid of him and his retaliation. The second incident occurred the next day or soon afterward. Following this assault, defendant had a well-established routine. Defendant would tell the victim to get ready and she would go into her room and wait for him to assault her. Although the victim claimed that these incidents blurred together, she recalled that they occurred almost every holiday. The third incident occurred during the following Christmas. Defendant warned the victim that she would not get what she wanted for Christmas if she did not do what

-1-

he wanted, but, if she did, she would. Again, defendant engaged in digital penetration, cunnilingus, and penile penetration. The fourth incident occurred when the victim was approximately 14 years old. Defendant took away the victim's phone and other privileges in order to coerce her into not resisting. Again, this occurred more than once and involved defendant engaged in penile penetration. The fifth incident occurred on November 12, 2015, when the victim was 16. This was the Thursday before defendant was arrested for domestic violence against the victim's mother. Again, defendant engaged in penile penetration.

The victim previously did not report these incidents because she was concerned that no one would believe her or that defendant would use his status as the household's father figure to punish or harm her. Sometimes, defendant would beat the victim if she hesitated and, other times, he would physically overpower and choke the victim while sexually assaulting her. The victim only told her best friend about defendant's sexual assaults. However, after defendant was arrested for domestic violence against the victim's mother, the victim felt both safe and compelled to inform her mother. This was because, during the argument that led to the domestic-violence incident, the victim overheard her mother and defendant quarreling about defendant having a sexually transmitted disease (STD). Because defendant had an STD, the victim felt that it was necessary that she be medically tested.

Eventually, defendant was charged with four counts of CSC-I and one count of CSC-III. On the morning of the first day of trial, the prosecution endorsed a new witness, the victim's best friend. Defendant objected that there was no notice and that the prosecution had not listed the best friend as a prospective witness. The prosecution responded that investigators had only managed to contact the witness shortly before trial. The trial court allowed the prosecution to introduce the witness's testimony. Defendant also made a statement on the record that his counsel was ineffective for failing to investigate and produce evidence that would allegedly show that the state had paid for daycare services for the victim's mother. Defense counsel explained that, even if such records existed, he did not believe that they were relevant.

During trial, the prosecution also called a number of other witnesses who testified about defendant's arrest, the subsequent investigation, and about the circumstances at the victim's home that repeatedly left defendant alone with victim. This included testimony about how the victim's mother was often not home because she worked. In contrast, defendant was home most of the time. Testing also confirmed that the victim had an STD. Because of the time between defendant's last sexual assault and ultimate investigation, testing of the victim's rape kit revealed no DNA.

Defendant testified in his own defense. Defendant categorically denied the victim's allegations, but admitted to his arrest for domestic violence involving the victim's mother. Defendant also admitted to being violent against the victim, but he claimed that he was a disciplinarian and that this discipline prompted the victim and her mother to lie about the sexual assaults. Defendant worked odd jobs throughout the relevant timeframe and claimed he was not always home alone with the victim. Defendant further testified about the daycare worker's schedule and when she was present in the home. Defendant explained that people were almost always present in the home with him and the children. Defendant's primary defense was that the victim and her mother decided to frame him for sexual assault after the last domestic-violence incident.

The jury deliberated for approximately four hours before it reported that it was deadlocked. The trial court instructed the jury to attempt to reach a verdict.

The following Monday, the trial court reconvened. The trial court reported that at the end of the previous court session, a juror submitted a note to the trial court stating it that the juror was unable to return to the jury on Monday morning. The trial court selected a new juror from the two alternate jurors with both counsel present. The trial court did not explain why the juror was unable to return. Two hours later, the jury returned a guilty verdict on all five charges.

Defendant now appeals as of right.

## II. DISCUSSION

Defendant raises four arguments on appeal. Taking each in turn, we find no basis for reversal.

### A. TESTIMONY REGARDING DOMESTIC VIOLENCE

Defendant argues that the trial court erred under MRE 401 and 403 by allowing the introduction of testimony relating to defendant's domestic-violence incident with the victim's mother a week before defendant's arrest.[1] We note that defendant's claim is only partially preserved. "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). In this case, defendant did not object to the introduction of the victim's testimony related to the domestic-violence incident. Therefore, to the extent that defendant is challenging the victim's testimony in this regard, his claim is unpreserved. Defendant also did not object on MRE 403 grounds; thus, this claim of error is also unpreserved. However, defense counsel did object on the ground of relevance, MRE 401, when the victim's mother testified regarding the domestic violence against her. Therefore, to the extent that defendant is challenging the victim's mother's testimony in this regard, his claim is preserved.

A preserved challenge to the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Thorpe*, 504 Mich at 251. Under the abuse of discretion standard, "[t]he decision to admit evidence . . . will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted). Preserved nonconstitutional errors are subject to a harmless error review and thus we may not set aside a verdict unless the error "resulted in a miscarriage of justice." *Id*. at 252 (quotation marks and emphasis omitted). This standard presumes the verdict's validity and

---

[1] To the extent that defendant is challenging the subject evidence on the ground that its admission violated MRE 404(b), this claim is unpreserved in light of his failure to object on that ground below. See *Thorpe*, 504 Mich at 252. Moreover, because defendant has failed to properly address the merits of any MRE 404(b) error, we consider it abandoned. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

directs us "to reverse only with respect to those errors that affirmatively appear to undermine the reliability of the verdict." *People v Mateo*, 453 Mich 203, 211; 551 NW2d 891 (1996).

Unpreserved claims of error are reviewed for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. Plain error affects a defendant's substantial rights when "the error affected the outcome of the lower court proceedings." *Id*.

Generally, all relevant evidence is admissible. MRE 402; *People v Sharpe*, 502 Mich 313, 331; 918 NW2d 504 (2018). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Our Supreme Court previously explained the elements of relevancy as follows: "Relevant evidence thus is evidence that is material related to any fact that is of consequence to the action[] and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000). "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense." *Id*. (quotation marks omitted). "A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy." *Id*. (quotation marks omitted).

Defendant argues that the trial court erred by allowing the introduction of this evidence because it was irrelevant in light of evidence about his previous arrests. Defendant contends that, because he was previously arrested, the victim had the opportunity during those arrests to inform her mother of his actions. In addition, defendant challenges the evidence under MRE 403 because any probative value was outweighed by the prejudice to defendant. MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" We hold that the evidence pertaining to defendant's arrest for domestic violence was relevant and that its probative value was not substantially outweighed by its prejudicial value.

Defendant's arrest for domestic violence served as the reporting trigger for this case. Because defendant was arrested, the victim felt both comfortable and compelled to report defendant's sexual assaults in order to seek testing for STDs. Although the arrest for domestic violence was not itself relevant to the elements of the charged crime, it was material to the victim's credibility. *Sabin (Aft Rem)*, 463 Mich at 57. While the earlier incidents explained the victim's reluctance to disclose, defendant's arrest for domestic violence acted as the impetus for the victim's report. Thus, it was highly relevant to a material fact.

Defendant contends that the fact that he was previously arrested lessened the probative value of this evidence because the victim was capable of reporting defendant's sexual assault earlier. However, the probative value of the evidence of the specific arrest at issue was also rooted in the discovery that defendant may have an STD and the victim's subsequent need to report defendant's sexual assaults to obtain STD testing for herself. Again, this was highly

probative to explain why the victim chose to come forward at that specific moment after five years of sexual assaults.

Defendant next asserts that the prejudicial impact of his arrest for domestic violence rendered this evidence inadmissible under MRE 403. Certainly, evidence of his domestic violence was prejudicial to defendant. However, when balanced against its highly probative value to explain the victim's decision to report at that specific moment, the evidence of the domestic violence was not unfairly prejudicial. See *Sharpe*, 502 Mich at 333 ("All relevant and material evidence is prejudicial; we are concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations."). Moreover, the trial court issued an appropriate instruction ordering the jury to not consider evidence that defendant previously committed a crime for the purposes of convicting in this case.

In sum, we conclude that the trial court did not plainly err or abuse its discretion in allowing admission of the evidence. *Thorpe*, 504 Mich at 251-252; *Carines*, 460 Mich at 763. But, even if the trial court had erred by admitting testimony regarding the incident of domestic violence, defendant fails to demonstrate that the alleged error was harmful. *Thorpe*, 504 Mich at 252. Notably, there was independent evidence that both defendant and the victim had gonorrhea. Additionally, the victim had also previously told her best friend about the sexual assaults. Therefore, defendant cannot show that the inclusion of the domestic violence evidence resulted in a miscarriage of justice. See *Mateo*, 453 Mich at 211. And, for the same reasons, defendant cannot demonstrate plain error. *Carines*, 460 Mich at 763. Moreover, as previously stated, the trial court explicitly instructed the jury to not consider defendant's prior act of domestic violence for the purposes of deciding guilt. We presume that this instruction cured any prejudicial effect. *People v Dupree*, 486 Mich 693, 711; 788 NW2d 399 (2010) ("We presume that the jury followed the trial court's instructions."). Accordingly, we find no error, plain or otherwise, in the admission of testimony regarding defendant's act of domestic violence against the victim's mother.

## B. REPLACEMENT JUROR

Defendant next argues that the trial court's use of a replacement juror when one of the jurors was unable to attend trial warrants a remand for an evidentiary hearing. We decline to remand for an evidentiary hearing because defendant waived review of this issue below.[2]

A "[w]aiver is the intentional and voluntary relinquishment of a known right, while forfeiture is the failure to assert a right in a timely fashion." *Walters v Nadell*, 481 Mich 377, 384 n 14; 751 NW2d 431 (2008) (quotation marks omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks omitted). In the context of juror replacement, a waiver occurs when counsel

---

[2] We previously denied without prejudice defendant's motion for a remand as to this claim. *People v Guy*, unpublished order of the Court of Appeals, entered February 14, 2019 (Docket No. 344388).

expressly approves the trial court's instruction and procedure. *People v Tate*, 244 Mich App 553, 558-559; 624 NW2d 524 (2001) (holding that counsel's expression of approval by responding "No" when queried by the trial court constituted a waiver of the issue of juror replacement).

Here, after explaining the procedure for substituting the missing juror with one of the two alternates, the trial court explicitly asked defense counsel: "Any objections to the process or the instruction . . . ?" Defense counsel explicitly responded in the negative, stating: "I have none." Moreover, after the jury was instructed regarding the replacement juror, the trial court again asked, "Any objection to the instruction [as] given . . . ?" Again, defense counsel responded in the negative, stating: "No, your Honor." Therefore, just as in *Tate*, we

> conclude that any error in either the instruction regarding the procedure in the event a juror had to be excused or the actual removal of the juror was extinguished by counsel's repeated waiver, either in the form of express approval or (which amounts to the same thing) by responding 'No' when specifically queried by the court whether there was anything further for the record. [*Tate*, 244 Mich App at 559.]

Accordingly, we also conclude that defendant has not shown cause to remand for an evidentiary hearing.

Defendant further challenges the juror's replacement on the basis that he was not present for this portion of the trial; therefore, he could not have appropriately waived this issue. However, this issue was not presented in defendant's statement of the questions presented. Therefore, it is not properly preserved and we need not consider it further. MCR 7.212(C)(5).

In any event, although the record is unclear whether defendant was present when the juror replacement procedures were initially discussed and the waiver occurred, it is clear that defendant was present when the court reconvened shortly thereafter. And, even assuming that defendant was initially absent when the juror replacement procedures were discussed and the waiver occurred, he has not established that the replacement of a juror required his presence and personal waiver. We have never indicated that anything more than the defense counsel's express approval was required to sufficiently personally waive the juror replacement. See *Tate*, 244 Mich App at 559. And, as to defendant's alleged absence, "[a] defendant has a right to be present during . . . any . . . stage of trial where the defendant's substantial rights might be adversely affected," including "the voir dire, [and] selection of and subsequent challenges to the jury . . . ." *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984); see also MCL 768.3. However, the "test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Buie*, 298 Mich App 50, 59; 825 NW2d 361 (2012) (quotation marks omitted). "It is possible that defendant's absence made no difference in the result reached." *People v Morgan*, 400 Mich 527, 536; 255 NW2d 603 (1977) (quotation marks omitted). In this case, defendant, if absent, was only absent for a short period and he was present for the remainder of trial. See *Buie*, 298 Mich App at 60. Also, defendant fails to explain how his presence would have altered the juror replacement procedure. See *id*. ("There is no evidence in

the record to support a finding that there was any reasonable possibility that defendant was prejudiced by this short absence." (quotation marks omitted)).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his defense counsel was ineffective for failing to investigate and produce a series of records from the state showing that the minor children received home daycare. He argues that this was prejudicial because this evidence would have shown that he did not have sufficient time alone with the victim to sexually assault her.

"The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). Absent an evidentiary hearing, we review defendant's claims of ineffective assistance of counsel for mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).[3]

"Under *Strickland v Washington*, [466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984),] establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." See *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks omitted). "[E]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016).

Defendant fails to meet either prong. First, defense counsel's performance did not fall below an objective standard of reasonableness. It is true that "[a] sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004). Assuming that evidence of the daycare provider's hours exists, defense counsel was not ineffective in failing to pursue it. Defense counsel stated on the record that he believed this evidence was irrelevant in light of the circumstances of the case. Defense counsel is only required to pursue "leads relevant to the merits of the case." *Grant*, 470 Mich at 487 (quotation marks omitted). As we grant deference to defense counsel's choice of trial strategy, we conclude that it is likely that defense counsel was concerned that the largely irrelevant evidence of daycare scheduling would distract from other, more substantive inconsistencies in the prosecution's case. In light of counsel's reasonable strategic choice, he was not ineffective.

---

[3] We also denied without prejudice defendant's motion for a remand on his ineffective-assistance-of-counsel claim. *People v Guy*, unpublished order of the Court of Appeals, entered February 14, 2019 (Docket No. 344388)

Second, even if defense counsel's performance had been deficient, defendant cannot demonstrate prejudice. In this case, the sexual abuse occurred over the course of five years. The victim's mother was often at work during both daytime and nighttime hours. Testimony showed that defendant stayed at home to care for the children while their mother was gone. Therefore, there was overwhelming evidence that defendant was present and alone with the victim for large portions of the relevant time frame. In contrast, this evidence of the daycare worker's alleged presence at the home on a temporary basis would not have significantly mitigated defendant's opportunity to sexually assault the victim. The trial testimony established that the daycare worker would only stay in the home on a partial basis and left for long periods. Evidence of this alleged daycare, even if in existence, does not "undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (quotation marks omitted). We conclude that defense counsel was not ineffective, and that there is no need for an evidentiary hearing because the existence of these records would not demonstrate counsel's ineffectiveness.

## D. LATE WITNESS ENDORSEMENT

Finally, defendant argues that the trial court erred by allowing the prosecution to endorse a late witness, namely, the victim's best friend, and that there was no good cause for this late endorsement.

"A prosecutor's late endorsement of a witness is permitted at any time upon leave of the court and for good cause shown." *People v Canter*, 197 Mich App 550, 563; 496 NW2d 336 (1992). "A trial court's decision to allow a late endorsement is reviewed for an abuse of discretion." *Id*. "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

MCL 767.40a provides in relevant part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.

The prosecutor provided the reason for its late endorsement of this witness on the record:

I would note that the law enforcement did get a statement from this witness, that statement is in the police report. That police report was turned over to defense several months ago. I would note that we started—we have been looking for this witness. We went and sent an investigator out several months ago trying to locate her. We had difficulty locating her. We sent him out again over the weekend, last week actually, and he was able to locate her and serve her [] yesterday.

I had a previous discussion with defense counsel several months ago about our efforts to locate [the witness]. This is not our first time discussing this witness, and I would also note that I indicated to defense counsel last week that we were still looking for her before we had actually located her, so there should be no surprise in this matter.

Defense counsel responded and argued against the introduction of this witness's testimony:

I don't recall that. I'm not saying that didn't happen, I simply don't recall that. But they've been looking for her—there was a request for her to be located and brought in for additional interview from March of 2016 and two years later, as I said earlier, on the day before trial they locate her. I think that's prejudicial to the defense. It does not give us sufficient notice to incorporate whatever she may end up saying, let alone interviewing her properly, into our trial strategy, and we would ask that this witness be excluded.

The trial court endorsed the witness, but ordered the prosecution not to mention the witness's name or her potential testimony during voir dire or opening statements. The trial court also allowed defense counsel time to interview the witness and the ability to renew his motion for this witness to be excluded. The trial court ordered that the witness's testimony not be disclosed to the jury until defense counsel was allowed to speak to her.

We have previously held that there is good cause for the late endorsement of a witness by the prosecution when the witness was recently identified and found by the prosecution. See *Canter*, 197 Mich App at 563. The trial court chose to credit the prosecutor's explanation for why it failed to provide notice until the first day of trial. Because we grant significant deference to the trial court's ability to judge credibility, the trial court did not abuse its discretion. *Id.* at 561 ("In light of our deference to the trial court's superior ability to evaluate credibility, we will not disturb [its credibility determinations].").

We have also recognized that appropriate limitations and accommodations for defense counsel may buttress the trial court's reasoning to endorse a late witness. See *id.* at 563. In this case, the trial court placed limitations on the prosecutor and afforded defense counsel an opportunity to interview the witness and renew his objection in order to limit any prejudice to defendant. Therefore, the circumstances of this case are almost identical to previous instances when we have upheld a trial court's late endorsement of a witness. Because the trial court created a balancing system of accommodations for defense counsel and the prosecution's late

discovery resulted from its difficulty in locating her, we conclude the trial court did not abuse its discretion.

Affirmed.

/s/ Anica Letica
/s/ Michael F. Gadola
/s/ Thomas C. Cameron