*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK ANTHONY TERSIGNI,

Defendant-Appellant.

UNPUBLISHED
December 18, 2025
1:46 PM

No. 369004
Oakland Circuit Court
LC No. 2023-283832-FC

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of four counts of first-degree criminal sexual conduct (CSC), MCL 750.520b(1)(a) (sexual penetration of person under 13 years of age). We affirm.

## I. FACTUAL BACKGROUND

Defendant was convicted of four counts of first-degree CSC perpetrated against the complainants, NT and BN, when they were, respectively, seven years old and four or five years old. Multiple assaults occurred in 1989, and at least one occurred in 1990. The assaults occurred at a house on Cranberry Lake Road in Clarkston, where defendant lived with his cousin, the complainants' father, AT, Sr. The complainants' parents were separated. NT and BN visited their father at the Cranberry Lake house along with their sister, ST, and their brother, AT, Jr.

On an unspecified date, ST told the children's mother, PT, that PT's brother, Steve, touched her in a way that made her uncomfortable. NT disclosed defendant's sexual abuse when PT asked her if anything had happened to her. Complainants' parents decided not to report the assaults to the police or to obtain medical treatment or counseling for the children, but they discontinued contact with defendant. NT and BN decided to pursue charges in 2023.

Defendant was charged with four counts of first-degree CSC. Counts 1 and 2 alleged, respectively, that defendant engaged in fellatio and cunnilingus with NT. These counts referred to an incident when he engaged in oral sex with NT while he was watching a pornographic video. Count III alleged that defendant engaged in fellatio with BN. This referred to an incident when he

-1-

asked her to imitate the conduct depicted in a pornographic video. Count IV alleged digital penetration of BN. This referred to an incident at her birthday party. The jury found defendant guilty of all four counts.

## II. SUBSTITUTION OF JUROR

Defendant first argues that he was denied a fair trial when the trial court failed to instruct the jury to begin deliberations anew after replacing a juror. He also contends that defense counsel was ineffective for failing to object to the court's failure to instruct. Although the court's failure was error, the error did not deny defendant a fair trial and was not prejudicial.

At the end of the fourth day of trial, the trial court instructed the jury and excused them to begin deliberations. A few minutes after the jury was excused from the courtroom to deliberate, the trial court learned that Juror 14 did not intend to return the following day because he had to attend to an urgent employment matter. The trial court and both attorneys agreed to excuse Juror 14 and replace him with Juror 13, one of two alternates. Both counsels affirmatively stated on the record that they had no objection to the court's handling of the matter. Defendant argues that the court erred because it did not instruct the jury that it was required to begin deliberations anew after replacing the juror. Defendant acknowledges that his attorney agreed to this procedure and argues that the failure to request the begin-anew instruction constituted ineffective assistance of counsel.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000); see also MCR 2.512(C); MCL 768.29. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (citation and quotation marks omitted). An affirmative statement by counsel that there are no objections to the jury instructions constitutes express approval of the jury instructions. *Id*. at 504-505. Defense counsel responded "No" when the trial court asked if there were any objections to its procedure when it replaced Juror 14 with Juror 13. He thus waived appellate review of his argument that the trial court erred by failing to give the begin-anew instruction. "Waiver" is "defined as the intentional relinquishment or abandonment of a known right," in contrast to "forfeiture, which has been explained as the failure to make the timely assertion of a right." *People v Hall*, 256 Mich App 674, 679; 671 NW2d 545 (2003) (quotation marks and citations omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citations omitted).

Regarding defense counsel's failure to object, defendant did not move in the trial court or this Court for a *Ginther*[1] hearing on the issue of ineffective assistance of counsel. Generally, when no *Ginther* hearing is held, this Court's review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). To establish ineffective assistance of counsel, a defendant first must demonstrate that trial counsel's performance fell below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 289-290; 806

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

NW2d 676 (2011). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*. "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id*. at 290.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Flores*, 346 Mich App at 612. The trial court must "instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Montague*, 338 Mich App 29, 38; 979 NW2d 406 (2021) (quotation marks and citation omitted). "[J]ury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id*.

MCR 6.411 provides:

> The court may impanel more than 12 jurors. If more than the number of jurors required to decide the case are left on the jury before deliberations are to begin, the names of the jurors must be placed in a container and names drawn from it to reduce the number of jurors to the number required to decide the case. The court may retain the alternate jurors during deliberations. If the court does so, it shall instruct the alternate jurors not to discuss the case with any other person until the jury completes its deliberations and is discharged. If an alternate juror replaces a juror after the jury retires to consider its verdict, the court shall instruct the jury to begin its deliberations anew.

Caselaw predating MCR 6.411 held that when an alternate juror replaces a juror after deliberations have begun, the trial court should instruct the jury to begin deliberations anew. *People v Tate*, 244 Mich App 553, 556-567; 624 NW2d 524 (2001). In *Tate*, a juror contracted a contagious illness after deliberations began. *Id*. at 556. The trial court released the ill juror and recalled the alternate juror as a substitute. *Id*. Before the jury resumed deliberations, the trial court questioned the alternate juror to verify that none of the jurors had discussed the case with him. *Id*. at 557. This Court concluded that the trial court should have instructed the jury to begin deliberations anew but that the error was harmless because there was no indication that the original jurors coerced the alternate juror. *Id*. at 566-568.

In this case, the trial court should have instructed the jury to begin deliberations anew but the omission of the instruction did not violate defendant's right to a properly-instructed jury. The trial court became aware of Juror 14's decision to absent himself from the proceedings ten minutes after the jury was excused to begin deliberations (4:52 p.m. to 5:02 p.m.). The court discussed the issue with counsels for ten minutes before bringing Juror 14 into the courtroom at 5:12 p.m. The 12 original jurors were thus assembled a total of 20 minutes before Juror 14 was removed. There is no record of how the jurors spent these 20 minutes, but it can be reasonably inferred that 20 minutes is not sufficient time for a jury to delve deeply into deliberations, especially when they expected to be released at 5:00 p.m. Defendant speculates that the jury might have chosen a foreperson in this time. However, the jurors' actions are a matter of speculation, and speculation is insufficient to establish that he was denied a fair trial. *Montague*, 338 Mich App at 38.

Defendant contends that trial counsel's failure to request the begin-anew instruction constituted ineffective assistance of counsel. "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023). Arguably, counsel's failure to request the instruction was deficient because the court rule requires the instruction and there is no apparent disadvantage to requesting it. However, in the absence of any record evidence that the original jurors conducted any deliberations in the 20 minutes they were assembled, we are left with only speculation, which is insufficient to establish prejudice. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

### III. DISCOVERY OF COMPLAINANTS' THERAPY RECORDS

Defendant next argues that the trial court erred by denying his motion to compel disclosure of the complainants' psychological records. The trial court initially granted defendant's motion to compel discovery of the complainants' therapy records and to conduct an *in camera* review of the records for information related to a defense theory that the complainants misremembered which relative abused them. However, after defendant failed to specify the period of time in which this disclosure might have occurred, the trial court denied the request. The trial court also found that the records were unlikely to contain the information defendant sought because the complainants did not begin therapy until they were adults, several years after the incidents occurred. Defendant argues that the trial court erred by denying his request.

This Court reviews a trial court's decision whether to allow discovery in a criminal case for an abuse of discretion. *People v Antaramian*, 346 Mich App 710, 717; 13 NW3d 380 (2023). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id.* (quotation marks and citation omitted). Issues regarding the applicability of a privilege are reviewed de novo. *In re CADP*, 341 Mich App 370, 379; 990 NW2d 386 (2022). Issues involving the interpretation of a statute or court rule are also reviewed de novo. *People v Kimble*, 470 Mich 305, 308-309; 684 NW2d 669 (2024).

"[W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an *in camera* review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense." *People v Stanaway*, 446 Mich 643, 649-650; 521 NW2d 557 (1994). The parties did not specify the qualifications of the complainants' counselors, but defendant did not deny that the records were protected by privilege. MCL 300.1700(h) recognizes the privileged communications between a psychologist and patient. MCL 333.18117 protects the privileged communications between a "licensed professional counselor or a limited licensed counselor" and client.

In *Stanaway*, 446 Mich at 651, the defendant sought discovery of counseling records from the complainant's social worker and sexual assault counselor in a juvenile diversion program. "The defendant argued that the records might contain inconsistent statements or might lead to exculpatory evidence, but admitted he had no basis for a good-faith belief that it was probable such information would be found." *Id.* In the companion case, *People v Caruso*, the defendant "moved to obtain the complainant's counseling records, asserting that there was good reason to believe the

complainant had been the victim of sexual abuse by her biological father." *Stanaway*, 446 Mich at 654. After concluding that the records sought were protected by one or more of the statutes granting privileges to communications with mental health providers, the Supreme Court addressed how to balance the privileges against the constitutional rights of the accused. *Id*. at 662. The Court concluded:

> Where the defendant has made the required showing, in camera inspection of privileged documents by the judge strikes the delicate balance between the defendant's federal and state constitutional rights to discover exculpatory evidence shielded by privilege, and the Legislature's interest in protecting the confidentiality of the therapeutic setting. Only after the court has conducted the in camera inspection and is satisfied that the records reveal evidence necessary to the defense is the evidence to be supplied to defense counsel. We are confident that trial judges will be able to recognize such evidence. The presence of defense counsel at such an inspection is not essential to protect the defendant's constitutional rights and would undermine the privilege unnecessarily. [*Id*. at 678-679.]

"In general, when a discovery request is made disclosure should not occur when the record reflects that the party seeking disclosure is on a fishing expedition to see what may turn up." *Id*. at 680 (quotation marks and citation omitted). The *in camera* inspection procedure "promotes the state's interest in protecting the privacy interests of the alleged victim, while safeguarding the defendant's right to a fair trial." *Id*. at 681.

Turning to "the application of the test enunciated to the specific facts and circumstances of the cases before" it, the Court concluded, "It was not an abuse of discretion to find the counseling communications protected by the privileges in *Stanaway* or discoverable in *Caruso*." *Id.* at 680. Defendant Stanaway asserted that he needed the records to aid "his attempt to unearth any prior inconsistent statements made by the complainant or any other relevant rebuttal evidence." *Id*. at 681. The Court concluded that this was merely "a generalized assertion that the counseling records may contain evidence useful for impeachment on cross-examination." *Id*. The trial court therefore did not abuse its discretion in denying his request for an *in camera* inspection. *Id*. The Court found that defendant Caruso "may have demonstrated a realistic and substantial possibility that the material he requested might contain information necessary to his defense." *Id*. at 682. The Court stated:

> The defense theory is that the claimant is a troubled, maladjusted child whose past trauma has caused her to make a false accusation against her uncle. The defendant asserted a good-faith belief in his motion that the complainant suffered sexual abuse by her biological father before this allegation of abuse, the nonresolution of which produced a false accusation and factual support for some sexually aggressive behavior, namely, writing a letter to her mother's live-in boyfriend inviting him to have sex with her in his car. The in camera review ordered by the trial judge may have been proper under the facts of this case. Because the record is not altogether clear regarding the grounds for ordering the in camera inspection, we remand to the trial court for further proceedings consistent with this holding. [*Id*. at 682-683 (footnotes omitted).]

The Court remanded Caruso's case to the trial court for further proceedings, with the instruction, "Only if the *in camera* inspection reveals information essential and reasonably necessary to the defense should it be provided to the defendant." *Id*. at 685.

In the instant case, defendant requested *in camera* review to identify specific information, namely, whether the complainants ever accused Steve of sexual abuse. Defendant contends that this is the type of narrow request contemplated in *Stanaway* for the reasonable purpose of investigating a defense theory that the complainants misremembered which individual molested them. However, defendant failed to make a good-faith showing that this theory might have merit. The sole basis of defendant's theory is the text message PT sent to the police in connection with their investigation of this case. PT stated that her eldest daughter, ST, revealed that Steve touched her in a way that made her feel uncomfortable. This revelation led PT to ask NT if anything similar had happened to her. NT responded that defendant sexually assaulted her. These exchanges happened when the complainants were still children. The prosecutor established that NT first received counseling when she was 23 years old, or 16 years after she was allegedly assaulted at age 7. The prosecutor did not give the age or date at which BN first received therapy, but if she received it as soon as she became an adult (age 18)—and there is nothing to suggest she received it any sooner—the shortest possible time period between the assault and the beginning of therapy would be 13 years. The length of time that passed between the discussion with PT and the beginning of the complainants' therapy negates defendant's theory that the complainants might have made statements in therapy that suggested confusion between defendant and Steve.

The only connection between Steve and the allegations against defendant was that PT referred to ST's allegations against Steve and NT's allegations against defendant in the same text message. This is too attenuated to support defendant's hypothesis that NT or BN misremembered who abused them, let alone that their therapy records from well over a decade later might reveal as much. Defendant's request was the "fishing expedition" the *Stanaway* Court's test was intended to prevent. The trial court therefore did not abuse its discretion by denying defendant's request for an *in camera* review of complainants' counseling records.

## IV. PRECLUSION OF CROSS-EXAMINATION REGARDING STEVE'S ALLEGED ASSAULTS

Defendant next argues that the trial court violated his right to present a defense because he was not permitted to cross-examine the complainants regarding the sexual assaults that Steve allegedly committed against them. The rape-shield statute, MCL 750.520j, generally excludes "[e]vidence of specific instances of the victim's sexual conduct" in prosecutions under MCL 750.520b to MCL 750.520g. The statute provides an exception for "[e]vidence of the victim's past sexual conduct" with the defendant and "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease" if the judge determines that the "evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value[.]" MCL 750.520j(1)(a) and (b). "The prohibitions contained in the rape-shield law represent a legislative determination that, in most cases, such evidence is irrelevant." *People v Arenda*, 416 Mich 1, 10; 330 NW2d 814 (1982).

In *People v Morse*, 231 Mich App 424, 436-438; 586 NW2d 555 (1998), overruled in part by *People v Masi*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 165620), this Court

held that evidence of a child complainant's prior sexual abuse by a person other than the defendant was admissible to prove that the child's knowledge of sexual acts came from the prior assaults by the other person. In *Masi*, our Supreme Court overruled *Morse* to the extent that it required proof that another person was convicted of CSC for the prior assault against the complainant. *Id*. at ___; slip op at 15-16. The Court in *Masi* reaffirmed the rule that "under some circumstances, admission of evidence regarding a complainant's prior sexual abuse is constitutionally required in light of a defendant's right to confrontation and right to present a defense." *Id*. at ___; slip op at 13. "[O]nce a sufficient offer of proof is made by a defendant, the trial court must hold an *in camera* evidentiary hearing to determine whether the defendant is constitutionally entitled to present particular evidence that is otherwise excluded under the rape-shield statute." *Id*. at ___; slip op at 16. "At the hearing, the court must determine whether the defendant has shown that (1) the prior act occurred, (2) the act closely resembled those at issue, (3) the act is relevant to a material issue, (4) the evidence is necessary to the defendant's case, and (5) the probative value of the evidence outweighs its prejudicial effect." *Id*. at ___; slip op at 16.

Defendant did not make an offer of proof regarding the prior sexual abuse that Steve purportedly committed. Moreover, there is no factual basis for defendant's belief that Steve might have sexually assaulted the complainants. Defendant merely speculates that Steve might have done so because PT indicated that ST reported a nonspecific incident. But, that establishes nothing with respect to the complainants. Because defendant never made an offer of proof to trigger the trial court's need to conduct the *in camera* analysis of the evidence, his argument is without merit.

## V. DENIGRATION OF COUNSEL

Next, defendant contends that the trial court pierced the veil of judicial impartiality when it remarked that defendant was trying to embarrass BN during cross-examination. Although defendant objected to the trial court's remark, he did not move for a mistrial and did not accept the trial court's offer of a curative instruction. Defendant concedes in his appellate brief that he did not preserve this issue for appellate review. See *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015). "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *Id*. at 168. We generally review unpreserved claims of error for plain error affecting the defendant's substantial rights. *Flores*, 346 Mich App at 608-609. To be entitled to relief under plain-error review, the defendant must show that (1) an error occurred; (2) the error was plain, meaning that it "is not subject to reasonable dispute"; and (3) the error affected his substantial rights, meaning that it "affected the outcome of the lower court proceedings." *Allen*, 507 Mich at 613-614 (quotation marks and citations omitted). However, "once a reviewing court has concluded that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required." *Stevens*, 498 Mich at 168.

In *Stevens*, 498 Mich at 170, our Supreme Courted stated "a new articulation of the appropriate test [for judicial bias], grounded in a criminal defendant's right to a fair and impartial jury trial." "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Id*. at 169. The Court stated:

> A judge's conduct pierces this veil and violates the constitutional guarantee of a
> fair trial when, considering the totality of the circumstances, it is reasonably likely

that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [*Id*. at 171.]

"A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. "These errors must be considered within the context of a given case, i.e., the totality of the circumstances, to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole." *Id*. at 172. In evaluating the totality of the circumstances,

> the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*.]

The *Stevens* Court included "belittling of counsel" as an example of judicial misconduct that pierces the veil of impartiality. *Id*.

Defendant's claim of misconduct is premised on a single remark the trial court made. The trial court made the comment after defense counsel asked BN several times how defendant moved his hand around her clothes in an effort to touch her vagina and after he asked BN twice whether she made any sound. Although the trial court could have made a more neutral comment that defense counsel was asking questions that had already been answered, its remark that counsel was "trying to embarrass" BN was brief and justified by counsel's conduct. The statement suggested that counsel was overzealous in cross-examining the complainant, but it did not suggest that he was dishonest, that defendant was guilty, or that the court was impartial or advocating against defendant. Under these circumstances, the trial court's remark did not constitute judicial misconduct that pierced the veil of impartiality.

## VI. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court should not have admitted AT, Jr.'s testimony that defendant sexually assaulted him in the same time period that he assaulted the complainants.

MCL 768.27a(1) provides, in pertinent part:

> (1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

> (2) As used in this section:

> (a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

-8-

(b) "Minor" means an individual less than 18 years of age.[2]

Although defendant does not dispute that the conduct described by AT, Jr., fits the definition of a "listed offense" under MCL 768.27a; MCL 28.722, we note that it does. MCL 28.722(i) defines "Listed offense" as "a tier I, tier II, or tier III offense." AT, Jr.'s testimony established that defendant violated MCL 750.145a, as enacted by 1931 PA 328.[3] The version of this statute in effect in 1989 prohibited accosting, enticing, or soliciting a child under the age of 16 "to submit to an act of . . . gross indecency, or to any other act of depravity or delinquency . . . ." *Id*. Violation of MCL 750.145a is a Tier II offense if perpetrated against a minor. MCL 28.722(t)(*ii*). The conduct described by AT, Jr., also arguably comes within the definition of "indecent exposure," MCL 750.335a, as enacted by 1931 PA 328."[4] The version of this statute in effect in 1989 provided, "Any person who shall knowingly make any open or indecent exposure of his or her person . . . is guilty of a misdemeanor . . . ." Indecent exposure is a Tier I offense if perpetrated against a minor. MCL 28.722(r)(*ii*). Thus, the requirement of MCL 768.27a(2)(a) is satisfied.

"[E]vidence admissible pursuant to MCL 768.27a may nonetheless be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012) (quotation marks and citation omitted). "[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id.* at 487. The trial court should consider these factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*.]

"This list of considerations is meant to be illustrative rather than exhaustive." *Id*.

The trial court did not expressly analyze these considerations. However, the similarity of the conduct with AT, Jr., and the occurrence of the incident in the same time period weigh in favor of the incident's probative value and against unfair prejudice. Defendant argues that the incident with AT, Jr., was not similar because it did not involve oral sexual contact or digital penetration.

---

[2] MCL 768.27a permissibly allows introduction of uncharged sexual offenses against minors committed before MCL 768.27a was enacted in 2005 and became effective January 1, 2006. *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007).

[3] The present version of MCL 750.145a, as amended by 2002 PA 45, retains the substantive definition, and provides that the actor does not need to know that the individual is under the age of 16.

[4] The present version of this statute, amended by 2002 PA 672, retains the substantive prohibitions for this offense, but modifies the penalties.

We disagree. The incident was similar to the charged incidents because it involved defendant exposing AT's children to pornography as a prelude to his own sexual conduct. The incident occurred in defendant's bedroom in the Cranberry Lake house during the period when the children came to the house to visit AT. Additionally, defendant's explanation to AT, Jr., that his semen was "icing" can be construed as an inducement to taste the ejaculate, similar to his statement to NT. Defendant also argues that the evidence was of just one alleged incident and that it lacked reliability because the alleged incident occurred so long ago and was not reported. Defendant has failed to show, however, that these considerations rendered the evidence's probative value substantially outweighed by the danger of unfair prejudice such that MRE 403 required its exclusion. Under these circumstances, the trial court did not abuse its discretion in allowing the prosecutor to introduce the evidence.

## VII. IMPEACHMENT

Next, defendant asserts that trial counsel was ineffective because he did not impeach AT, Jr., with his past conviction for unlawfully driving away an automobile (UDAA), MCL 750.413. Defense counsel believed that UDAA did not include an element of theft and was therefore not included in MRE 609.

At the time of defendant's trial, MRE 609(a) stated in pertinent part:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the *crime contained an element of theft*, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect. [Emphasis added.]

AT, Jr., was convicted under MCL 750.413, which states, "Any person who shall, wilfully and without authority, take possession of and drive or take away . . . any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment . . . for not more than 5 years." The essential elements of UDAA are: "(1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission." *People v Dutra*, 155 Mich App 681, 685; 400 NW2d 619 (1986).

In *People v Hendricks*, 446 Mich 435, 440, 450; 521 NW2d 546 (1994), the Court addressed whether a defendant charged with armed robbery had the right to a lesser-offense jury instruction on UDAA. The Court held that the UDAA statute "was not aimed at preventing theft,

because under such circumstances our larceny statutes would suffice . . . ." *Id*. at 448. Instead, the purpose of the statute was "directed toward an annoying, but relatively harmless type of trespass . . . ." *Id*. The UDAA statute addressed nonconsensual uses of another person's automobile, which were made "without intent to permanently deprive the owner of the possession of his property, but merely for the sake of joy-riding or something of that kind and then abandoning the cars . . . ." *Id*. at 449 (quotation marks and citation omitted). In contrast, "[r]obbery, while containing elements of theft of property, is primarily an assaultive crime." *Id*. The Court concluded "that UDAA and armed robbery are not of the same class or category, and that UDAA is not a possible cognate offense where the primary offense charged is armed robbery." *Id*. at 450.

Defendant argues that a conviction under MCL 750.413 might, in fact, include an element of theft because the Legislature made a separate provision for misdemeanor joyriding. MCL 750.414 states, in pertinent part:

> Any person who takes or uses without authority any motor vehicle *without intent to steal the same*, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $1,500.00. However, in case of a first offense, the court may reduce the punishment to imprisonment for not more than 3 months or a fine of not more than $500.00. [Emphasis added.]

Defendant cites no authority for his argument that convictions under MCL 750.413 may be used for impeachment under MRE 609 because MCL 750.414 establishes the possibility that an act prosecuted under MCL 750.413 might have involved larcenous intent. We have not found any authority supporting this interpretation. MRE 609(a)(2) allows a conviction to be used for impeachment if it "contained an element of theft." The phrase "contained an element of theft" more logically refers to the legal requirements for the conviction, and not to whether the specific facts included additional intentions outside of the statutory definition. Nor has defendant substantiated his suggestion the specific conviction at issue was based on "an actual motor vehicle theft." Defendant's distinction between the two statutes is at best a novel theory. "Defense counsel cannot be deemed deficient for failing to advance a novel legal argument." *People v Crews*, 299 Mich App 381, 400; 829 NW2d 898 (2013).

## VIII. CUMULATIVE ERROR

Defendant argues that if no individual error warrants reversal, he should be granted a new trial on grounds of cumulative error. Claims of cumulative error are reviewed "to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Lowrey*, 342 Mich App 99, 119; 993 NW2d 62 (2022) (quotation marks and citation omitted). However, this case does not involve multiple errors. Accordingly, reversal on the basis of cumulative error is not warranted. *People v LeBlanc*, 465 Mich 575, 591-592; 640 NW2d 246 (2002).

## IX. SENTENCING

Finally, defendant challenges the scoring of offense variable (OV) 6.  He was sentenced under the 1988 judicial sentencing guidelines because the conduct giving rise to his convictions occurred before the legislative sentencing guidelines, MCL 777.1 *et seq*., became effective on January 1, 1999.  MCL 769.34(1); *People v Reynolds*, 240 Mich App 250, 253; 611 NW2d 316 (2000).  Defendant argues that the trial court improperly assigned 10 points to OV 6, involving multiple victims.  Claims of scoring error under the judicial guidelines were not cognizable claims for appellate relief.  *People v Raby*, 456 Mich 487, 496-497; 572 NW2d 644 (1998).  Accordingly, we need not address this issue, and we decline to do so.

Affirmed.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani